JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Donaze Melvin, Jr., appeals from the judgment of the common pleas court, rendered after a no contest plea, finding him guilty of drug possession and sentencing him to two years of community control sanctions. Melvin argues that the trial court erred in denying his motion to suppress evidence obtained as a result of his arrest because 1) the police did not have reasonable suspicion to justify an investigative stop; 2) there was no probable cause to arrest him; 3) the seizure of the unlawful contraband was based on an unlawful arrest for a minor misdemeanor; and 4) the arresting officers lacked jurisdiction to arrest him. We reverse and remand.
 {¶ 2} The record, developed at the suppression hearing, reveals the following. At approximately 7:45 p.m. on October 13, 2005, Shaker Heights police officers responded to a dispatch regarding possible drug activity at 2547 Cheshire Road in Shaker Heights. The dispatcher indicated that a citizen informant, whose name was known to the police but who wished to remain anonymous, had called and reported that a white Chevrolet Monte Carlo had parked outside the home; a male had then exited the home and approached the back of the car, whereupon the driver opened the trunk and the male placed an "item" in it. The caller reported that both men were sitting in the vehicle. The caller additionally reported that in the last hour, the same male had twice exited the home and gotten into a vehicle, which had then driven around the block and immediately returned, whereupon the male had exited the *Page 4 
vehicle and re-entered the home. Since July of 2005, the same caller had reported suspected drug activity approximately ten to 15 times. In response to the reports, Shaker Heights police had conducted periodic surveillance of the home. Detective Patrick Carlozzi surveilled the home approximately six times between July 2005 and October 12, 2005, and observed the male, as described by the caller, exiting the home and "going to cars off and on." Detective Carlozzi testified at the suppression hearing that, in light of his experience, such activity was indicative of illegal drug activity. Detective Carlozzi testified further that the police learned, after checking the license plate numbers reported by the informant, that some of the cars were registered to drivers with prior arrests for drug offenses, but he admitted that the police had never been able to corroborate that anything illegal was occurring.
 {¶ 3} After receiving the dispatch, three officers, each driving an unmarked car, responded to the area to establish surveillance. As one of the officers drove south on Cheshire Road, the white Monte Carlo headed north on Cheshire Road. The officers, who were driving unmarked cars not equipped with lights for effecting pullovers, followed the car as it turned on several streets in Shaker Heights, and eventually into the city of Cleveland, while Detective Carlozzi radioed for marked cars "to stop the car and identify the occupants."
 {¶ 4} After the marked cars arrived and activated their lights, the Monte Carlo veered over several lanes and then stopped in a vacant lot. The driver, later identified as Mario Galito, and the passenger, later identified as Donaze Melvin, *Page 5 
stepped out of the car. Detective Carlozzi then put Galito and Melvin in the back seat of separate police cars, with the doors open, in order to talk to them. According to Detective Carlozzi, neither Galito nor Melvin were under arrest at this time.
 {¶ 5} Detective Carlozzi spoke with Galito first, and advised him that someone had seen Melvin put something in the trunk of his car. When he asked Galito what it was, Galito admitted that it was marijuana. Galito assented when Detective Carlozzi asked for permission to look in the trunk of the car, where Carlozzi found less than 12 grams of marijuana in a glass jar. Detective Carlozzi then advised Galito and Melvin that they were under arrest "for violation of state drug law."
 {¶ 6} Detective Carlozzi then asked Melvin if he had any weapons or drugs on his person and Melvin kicked off his right shoe and stated that he had two packs of cocaine in it. Melvin was subsequently charged with possession of less than five grams of cocaine, in violation of R.C.2925.11, a fifth degree felony.
 {¶ 7} The trial court found that "the State did indicate enough reasonable suspicion for the police officer to make the stop," and denied Melvin's motion to suppress. After he entered a no contest plea, the trial court found him guilty and sentenced him to two years of community control sanctions. Melvin now appeals and assigns four assignments of error for our review.
The Investigative Stop *Page 6 {¶ 8} In his first assignment of error, Melvin argues that the trial court erred in denying his motion to suppress because the police did not have a reasonable suspicion of criminal activity to justify an investigative stop.
 {¶ 9} In reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. Accepting these facts as true, we must then independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court properly applied the substantive law to the facts of the case.[1] Id.
 {¶ 10} Melvin contends that the tip relied upon by the police in making the stop was insufficient, without independent police corroboration, to create a reasonable suspicion of criminal activity.
 {¶ 11} "The United States Supreme Court has interpreted theFourth Amendment[2] to permit police stops of motorists in order to investigate a reasonable *Page 7 
suspicion of criminal activity." Maumee v. Weisner, 87 Ohio St.3d 295,299, 1999-Ohio-68, citing Terry v. Ohio (1968), 392 U.S. 1, 22,88 S.Ct. 1868, 20 L.Ed.2d 889. Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. Id., citing United States v. Cortez (1981), 449 U.S. 411, 417,101 S.Ct. 690, 695, 66 L.Ed. 2d 621, 628-629. "Under this analysis, `both the content of the information possessed by police and its degree of reliability' are relevant to the court's determination."Maumee, 87 Ohio St.3d at 299, quoting Alabama v. White (1990),496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309.
 {¶ 12} Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. State v.Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, at 4|35, citing Alabama v.White, supra at 330. But it requires something more than an "inchoate and unparticularized suspicion or `hunch.'" Terry, supra at 27. "TheFourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow (2000),528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570. The justification is viewed in light of the totality of the circumstances. State v. Bobo (1988),37 Ohio St.3d 177, 180.
 {¶ 13} Courts have generally recognized three categories of informants: identified citizen informants, known informants (someone from the criminal world *Page 8 
who has provided reliable tips), and anonymous informants. SeeMaumee, 87 Ohio St.3d at 300. The United States Supreme Court has observed that an anonymous informant is comparatively unreliable and that his tip, therefore, will generally require independent police corroboration, but has suggested that an identified citizen informant may be highly reliable and that a strong showing regarding other indicia of reliability (such as the informant's veracity and basis of knowledge) may be unnecessary. Id., citing Alabama, 496 U.S. at 329,110 S.Ct. at 2415, 110 L.Ed.2d at 308, and Illinois v. Gates, 462 U.S. at 233-234, 103 S.Ct.at 2329-2330, 76 L.Ed.2d at 545.
 {¶ 14} Accordingly, as noted by the Ohio Supreme Court inMaumee, both federal and Ohio appellate courts have typically accorded the identified citizen informant higher credibility. See, e.g.,United States v. Pasquarille (C.A.6, 1994), 20 F.3d 682, 689 (citizen informant's tip found reliable because it was based on firsthand observations as opposed to "Idle rumor or irresponsible conjecture,'" quoting United States v. Phillips (C.A.5, 1984), 727 F.2d 392, 397);State v. Loop (Mar. 14, 1994), Scioto App. No. 93CA2153 ("`[Information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable,'" quoting State v. Carstensen (Dec. 18, 1991), Miami App. No. 91-CA-13).
 {¶ 15} Here, it is apparent that the informant was an identified citizen. Detective Carlozzi testified that the police knew the informant's name, although the *Page 9 
informant wished to remain anonymous to the general public. Moreover, the informant had continued contact with the Shaker Heights Police Department for a three-month period from July 2005 through October 2005. This lends more credibility to the informant's tip. As the Ohio Supreme Court stated in Maumee, supra, at 514, "[w]e believe that greater credibility may be due an informant such as this who initiates and permits extended police contact rather than one who phones in a tip and retreats from any further police interaction."
 {¶ 16} In addition, the basis of the informant's knowledge furthers his or her credibility in this case because it was clearly based on an eyewitness account of the alleged criminal activity as it was occurring. "Typically, a personal observation by an informant is due greater reliability than a secondhand description." Maumee, supra, at 302, citing Gates, 462 U.S. at 233-234.
 {¶ 17} Moreover, although, as Detective Carlozzi admitted, as of October 13, 2005, the police had not yet been able to corroborate any of the informant's earlier tips, their periodic surveillance of the home, undertaken as a result of the tips, had suggested "there was possibly some type of illegal transactions going on with narcotics."
 {¶ 18} Taken together, these factors persuade us that the informant's tip was trustworthy and credible, and sufficient to withstand aFourth Amendment challenge without independent police corroboration. Nevertheless, the content of the information provided by the tip was insufficient to create reasonable suspicion to *Page 10 
stop. Reasonable suspicion is dependent upon both the content of the information provided and its degree of reliability. Both the quantity of information available and its quality must be examined under a totality of circumstances approach. Alabama, supra, at 330-331.
 {¶ 19} Here, the tip stated only that Melvin had placed an "item" in the trunk of a car and was sitting in the car with another male. No description of the "item" was given which would lead the police to conclude that it was related to drug activity. Although the police may have suspected that the "item" involved illegal drugs, "`whether there was reasonable suspicion depends on the actual content of the tip [the police] received, not what [the police] subjectively believed the information to be.'" United States v. Hudson (C.A.6, 2005),405 F.3d 425, 434, quoting United States v. Payne (C.A.6, 1999), 181 F.3d 781,789. Here, the police had nothing more than a hunch that the item in the trunk was related to illegal drug activity. Moreover, the activity itself-sitting in a car with another individual-is not indicative of any criminal activity.
 {¶ 20} Accordingly, we find that, under the totality of the circumstances, the investigative stop of the Monte Carlo was based on insufficient facts to create reasonable suspicion to justify the stop.
 {¶ 21} The evidence does not support the State's argument that the officers initiated a traffic stop of the vehicle. Detective Carlozzi specifically testified that "[o]nce the officers, uniform officers, activated their lights, [the] car went from the *Page 11 
extreme right lane, over to the left second land, and then veered into a vacant lot * * *." The evidence is clear that any traffic violation was committed after the officers activated their lights to stop the car, not before.
 {¶ 22} Appellant's first assignment of error is sustained.
Custodial Arrest for Minor Misdemeanor Offense {¶ 23} In his third assignment of error, Melvin argues that the trial court erred in denying his motion to suppress because he was unlawfully arrested for a minor misdemeanor offense.
 {¶ 24} Initially, we note that Melvin did not raise this error in the trial court and thus has waived all but plain error. See Crim.R. 52(A). We find such plain error here.
 {¶ 25} Detective Carlozzi testified that, after discovering what he characterized as "a little bit of marijuana," less than 12 grams, in the trunk of Galito's car, he advised both Galito and Melvin that they were under arrest for "violation of state drug law."
 {¶ 26} Pursuant to R.C. 2925.11(C)(3)(a), possession of marijuana in an amount less than 100 grams is a minor misdemeanor. In Ohio, a person may be arrested for a minor misdemeanor in only limited circumstances. Pursuant to R.C. 2935.26:
 {¶ 27} "(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the *Page 12 
commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:
 {¶ 28} "(1) The offender requires medical care or is unable to provide for his own safety.
 {¶ 29} "(2) The offender cannot or will not offer satisfactory evidence of his identity.
 {¶ 30} "(3) The offender refuses to sign the citation.
 {¶ 31} "(4) The offender has previously been issued a citation for the commission of that misdemeanor and has failed to do one of the following:
 {¶ 32} "(a) Appear at the time and place stated in the citation;
 {¶ 33} "(b) Comply with division (C) of this section [regarding remittance by mail or payment at the clerk of court's office of the fine and costs]."
 {¶ 34} In Atwater v. Lago Vista (2001), 532 U.S. 318, 121 S.Ct. 1536,149 L.Ed.2d 549, the United States Supreme Court held that theFourth Amendment of the United States Constitution does not forbid warrantless arrests for minor criminal offenses. Nevertheless, in State v.Brown, 99 Ohio St.3d 323, 2003-Ohio-3931, the Ohio Supreme Court held that Section 14, Article I of the Ohio Constitution provides greater protection than the Fourth Amendment against warrantless arrests for minor misdemeanors and, therefore, an arrest for a minor misdemeanor where none of the R.C. 2935.26 exceptions are applicable violates Section 14, Article I of the Ohio Constitution *Page 13 
and any evidence seized in a search incident to the arrest must be suppressed.
 {¶ 35} Here, it is apparent that Melvin was unlawfully arrested for the minor misdemeanor offense of possession of 12 grams of marijuana, when none of the R.C. 2935.26 exceptions applied. Although Melvin could have been briefly detained while the police issued a citation, his arrest was illegal.
 {¶ 36} Nevertheless, the record reflects that, in response to Detective Carolozzi's question regarding whether he had any drugs or weapons on his person, Melvin volunteered the fact that he had two packets of cocaine in his shoe, for which he was ultimately charged. Police officers do not need a warrant, probable cause, or even a reasonable, articulable suspicion to conduct a search when a suspect voluntarily consents to the search. State v. Riggins, Hamilton App. No. C-030626, 2004-Ohio-4247, at 4|11, citing Schneckloth v. Bustamonte
(1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854; State v.Comen (1990), 50 Ohio St.3d 206, 211. Voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search. State v. Robinette, 80 Ohio St.3d 234,241, 1997-Ohio-434. Furthermore, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." United States v. Watson (1976) 423 U.S. 411, 424, 96 S.Ct. 820,46 L.Ed.2d 598. Even suspects who are handcuffed may voluntarily consent to a search. See United States v. Crowder (C.A.6, 1995), 62 F.3d 782,788. *Page 14 
 {¶ 37} When, however, consent is obtained during an illegal detention, the consent is negated "even though voluntarily given if [the consent is] the product of the illegal detention and not the result of an independent act of free will." Florida v. Royer (1983), 460 U.S. 491,501, 103 S.Ct. 1319, 75 L.Ed.2d 22. See, also, Robinette, 1997-Ohio-343, at paragraph three of the syllabus. The State bears the burden of proving, by "clear and positive" evidence, that consent was freely and voluntarily given. Bumper v. North Carolina (1968), 391 U.S. 543, 548,88 S.Ct. 1788, 20 L.Ed.2d 797; State v. Posey (1988), 40 Ohio St.3d 420,427. Whether a consent to search was voluntary or the product of duress and coercion, either express or implied, is to be determined from the totality of the circumstances. Bustamonte, 412 U.S. at 219 and 248-249;Robinette, supra; State v. Chapman (1994), 97 Ohio App.3d 687, 691.
 {¶ 38} Here, we find that, under the totality of the circumstances, Melvin's consent was not voluntary. First he was advised, illegally, that he was under arrest for a minor misdemeanor offense. Then, according to Detective Carlozzi:
 {¶ 39} "I said, do you have any weapons on you, do you have any drugs on you, because when you go back to the jail, it is a detention facility; if you get caught with additional narcotics or weapons on you back at jail, you're gonna catch another charge."
 {¶ 40} As is apparent from the record, Detective Carlozzi did not advise Melvin *Page 16 
 {¶ 41} that he could refuse or that any evidence found in the search could be used against him. See Robinette, supra at 245. In fact, Detective Carlozzi implied that if any contraband on Melvin's person were disclosed at the scene, rather than at the jail, there would be no additional charges. In light of these facts, we find that Melvin's consent was coerced, rather than freely and voluntarily given. Accordingly, the evidence should have been suppressed and, therefore, the trial court erred in denying the motion to suppress.
 {¶ 42} Appellant's third assignment of error is sustained. Accordingly, appellant's second and fifth assignments of error are rendered moot and we need not address them. See App.R. 12(A)(1)(c). Melvin withdrew his fourth assignment of error.
Reversed and remanded.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, P. J., CONCURS. *Page 16 
MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION.
[1] Crim.R. 12(F) requires that a trial court state its "essential findings" on the record when factual issues are involved in determining a motion. The trial court made no factual findings here. Nevertheless, where findings are not requested by a party and the record provides a reviewing court with a sufficient basis to review the assignments of error, the failure of a trial court to issue such findings is not prejudicial error. State v. Williams, Cuyahoga App. No. 81364, 2003-Ohio-2647, at fn. 2, citing State v. Benner (1988),40 Ohio St.3d 301, 317-318. Because we find there exists a sufficient basis from which to review the assignments of error, we will conduct our review in the absence of the trial court's explicit findings.
[2] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."