JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} After entering a plea of no contest to a charge of carrying a concealed weapon, defendant-appellant Steven Gross appeals from the trial court's decision to deny his motion to suppress evidence.
 {¶ 2} Gross presents one assignment of error in which he argues the search that led to the discovery of the weapon violated his constitutional rights.
 {¶ 3} Upon a review of the record, this court agrees. Gross's assignment of error, therefore, is sustained. His conviction is reversed, and this case is remanded for further proceedings.
 {¶ 4} At the hearing on Gross's motion to suppress evidence, the state presented the testimony only of Cleveland Metropolitan Housing Authority ("CMHA") officer Randy Ramsey. Ramsey stated that on July 13, 2007[1]
he was in his zone car in the "Cedar Estates"; he was on "special detail" due to "numerous robberies***taking place" in that area.[2]
 {¶ 5} Ramsey testified he noticed a man, later identified as Gross, exiting "the three-story walkup of 2186 East 30th." Ramsey did not recognize Gross, and his actions caught Ramsey's attention because Gross stood on the porch *Page 4 
briefly, went back inside the building's hallway, re-emerged, and looked up at the window and then from side to side, as if he were "looking for someone."
 {¶ 6} Ramsey continued to watch. Gross walked to the parking lot and stopped; he looked from "side to side like if he was waiting for someone to approach him or he was looking for someone." At that time, "an unknown black male approached him," and they "had a brief conversation," but Gross "waved the black male off and he was making to walk northbound on East 30th [Street]."
 {¶ 7} Ramsey testified that he made the decision to approach Gross "to see if this male is okay." He justified his decision as an effort to determine if Gross "needed direction to go somewhere."
 {¶ 8} On cross-examination, however, Ramsey indicated that Gross's behavior actually had made him suspicious; Ramsey testified he "was concerned because [Gross] was in and out of that three story walk[up], and he was looking back and forth, up, down the three story walkup; that made me concerned." Ramsey, still in his vehicle, "approached" Gross and "asked him was he okay, was he lost***." Gross replied, "[I]t's none of your [f-ing business]."
 {¶ 9} Gross's response caused Ramsey to "pull up onto the sidewalk" and to get out "further to speak to" Gross. At that point, Ramsey "smelled the aroma of burnt marijuana emanating from his person and breath." Ramsey asked *Page 5 
Gross if he lived on the CMHA property, and Gross replied that he did. Ramsey then demanded to see some identification.
 {¶ 10} Rather than complying, Gross "stated some type of form of harassment," so Ramsey "asked for a second time." Gross began to walk off, "bump[ing] his left shoulder to [Ramsey's] left shoulder." At that, Ramsey "grabbed" Gross, stating that he "need[ed] to see some I.D." Apparently "out of nowhere," a Cleveland police lieutenant appeared on the scene and he "assisted" Ramsey by "securing]" Gross.
 {¶ 11} Gross finally stated that he carried identification in his "bag." According to Ramsey, the police lieutenant went into Gross's bag to obtain the identification and "retrieved an unloaded .38 revolver," along with "five live rounds at the bottom of the bag***." With Gross's identification in hand, Ramsey discovered Gross "had an outstanding warrant with Lakewood," so he was placed under arrest.
 {¶ 12} Gross subsequently was indicted in this case on one count of carrying a concealed weapon. Prior to trial, he filed a motion to suppress evidence. The trial court denied Gross's motion, stating in pertinent part as follows:
 {¶ 13} "It seems to me that the police officer may approach, frankly, just about anyone to ask questions as long as that approach doesn't involve a seizure. *Page 6 
 {¶ 14} "***I don't think the State is contending that there was reasonable suspicion***.
 {¶ 15} "So I'll take Officer Ramsey at his word that he was approaching Mr. Gross at first just to make sure Mr. Gross didn't have a problem that he needed help with and situations are fluid.
 {¶ 16} "Some of the facts about what happened, it seems to me they rise to a reasonable suspicion.***Mr. Gross mentioned that he lived there.
 {¶ 17} "***Ramsey is generally familiar with the residents and this heightened his suspicion***, and then Mr. Gross could not support his assertion that he lived there with identification.
 {¶ 18} "***[H]e was welcome to decline to try to offer to provide identification. He apparently did not decline that offer. He did produce something."
 {¶ 19} In light of the trial court's decision, Gross entered a plea of no contest to the charge of carrying a concealed weapon, and the trial court ultimately found him guilty of the offense. Gross received the sanction for his conviction of eighteen months of community control.
 {¶ 20} He now appeals his conviction with the following assignment of error. *Page 7 
 {¶ 21} "The trial court erred in overruling the motion to suppressas there was neither reasonable suspicion nor probable cause to detainand search Mr. Gross, in violation of U.S. Const. Amend. IV, XIV, andOhio Const. Art. I, Sec. 14."
 {¶ 22} Gross argues that the trial court's decision to deny his motion to suppress evidence was improper, since the search violated his constitutional rights. This court agrees.
 {¶ 23} A motion to suppress evidence challenges the arrest, search, or seizure at issue as somehow being in violation of the Fourth Amendment of the United States Constitution. State v. Williams, Cuyahoga App. No. 81364, 2003-Ohio-2647, ¶ 7. The principle remedy for such a violation is the exclusion of evidence from the criminal trial of the individual whose rights have been violated. Id. Exclusion is mandatory when such evidence is obtained as a result of an illegal arrest, search or seizure. Id., citing Mapp v. Ohio (1961), 367 U.S. 643.
 {¶ 24} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact; this court accepts the trial court's findings of fact if they are supported by competent, credible evidence. State v. Melvin, Cuyahoga App. No. 88611,2007-Ohio-3779, ¶ 9. Accepting these facts as true, this court then must independently determine, as a matter of law and *Page 8 
without deference to the trial court's conclusion, whether those facts meet the applicable legal standard. State v. Locklear, Cuyahoga App. No. 90429, 2008-Ohio-4247, ¶ 24; State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, ¶ 8.
 {¶ 25} The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures, unless an exception applies. Id., ¶ 25. Moreover, the Supreme Court of Ohio has held that, in certain circumstances, Article I, Section 14 of the Ohio Constitution provides even greater protection than the federal constitution against warrantless arrests. State v. Jackson, Cuyahoga App. No. 85639, 2005-Ohio-5688, ¶ 14.
 {¶ 26} One exception to the warrant requirement is the investigatory stop, which is permitted pursuant to Terry v. Ohio (1968), 392 U.S. 1. This type of exception is "narrowly drawn"; it "allows a police officer without probable cause to stop and briefly detain a person if the officer has a reasonable suspicion based upon specific articulable facts that the suspect is engaged in criminal activity." State v.Franklin (1993), 86 Ohio App.3d 101, 103.
 {¶ 27} Thus, this court must determine whether, under the totality of the circumstances, the "stop" was objectively justified at its inception, i.e., Ramsey had a reasonable belief that Gross might be engaged in criminal activity. Ramsey made no such claim. Instead, Ramsey indicated he simply did not like the way Gross was behaving. State v.Locklear, supra. *Page 9 
 {¶ 28} Ramsey justified his approach by testifying that he was concerned that Gross might need "help." When Gross declined, however, Ramsey neither went on his own way, nor permitted Gross to leave.State v. Melvin, supra. Instead, Ramsey drove up onto the sidewalk, exited his car, and confronted Gross.
 {¶ 29} Ramsey thus admitted from his testimony that, by that point, Gross was not free to leave; rather, Ramsey demanded identification.Franklin, supra. "Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and in fact could leave." State v.Robinette, 80 Ohio St.3d 234, 241, 1997-Ohio-343. (Emphasis added.)
 {¶ 30} The testimony presented in this case demonstrated that, in fact, although Gross attempted to leave, Ramsey prevented him from doing so by "laying hands on him." Franklin, supra. Subsequently, when Gross informed the officers that his identification was inside his bag, this did not amount to a "consent" to search. Locklear, ¶ 36, cf., State v.Hull, Ashtabula App. No. 2003-A-0068, 2005-Ohio-2526, ¶ 13. *Page 10 
 {¶ 31} A review of the record, therefore, demonstrates that the police stop and subsequent search of Gross were unconstitutional.Williams, supra; Franklin, supra. Therefore, the trial court erred in denying Gross's motion to suppress evidence. State v. Melvin, supra.
 {¶ 32} Gross's assignment of error, accordingly, is sustained.
 {¶ 33} Gross's conviction is reversed, and this case is remanded for further proceedings.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, J., and MARY JANE TRAPP, J.*, CONCUR.
[1] Ramsey never indicated the time of day in which the incident that led to Gross's arrest occurred.
[2] Quotes are taken from Ramsey's testimony.
* Sitting by assignment: Judge Mary Jane Trapp of the Eleventh District Court of Appeals. *Page 1