[Cite as *State v. Carmichael*, 2011-Ohio-2921.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 95618

---

# STATE OF OHIO

### PLAINTIFF-APPELLANT

vs.

# TYRELL L. CARMICHAEL

### DEFENDANT-APPELLEE

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-531894

**BEFORE:** Rocco, J., Celebrezze, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** June 16, 2011

-i-

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor

BY:   Mollie Ann Murphy
       Matthew E. Meyer
Assistant County Prosecutors
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**

Michael S. Weiss
602 Rockefeller Building
614 Superior Avenue
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

**{¶ 1}**  Plaintiff-appellant the state of Ohio appeals from the trial court order that granted the motion to suppress evidence filed by defendant-appellee Tyrell L. Carmichael.

**{¶ 2}**  The state presents one assignment of error. The state argues the trial court incorrectly determined the police investigative stop of the van in which Carmichael was riding violated the Fourth Amendment's prohibition against unreasonable searches and seizures.

{¶ 3} Upon a review of the record, this court disagrees. Consequently, the trial court's order is affirmed.

{¶ 4} Carmichael was indicted in this case on six counts, charged with two counts each of drug trafficking and possession, possession of criminal tools, and tampering with evidence, with several forfeiture specifications, based upon an incident that occurred on December 3, 2009 at approximately 10:00 p.m. During their testimony at the hearing on Carmichael's motion to suppress evidence, the state's witnesses provided the following account of the incident.

{¶ 5} Cleveland police detective Gerald Crayton testified he was in an undercover vehicle parked on Hampden Avenue approximately twenty feet from Hampden's intersection with E. 105th Street. Crayton was part of a team of officers; he was "spotting," watching the area for possible criminal activity.

{¶ 6} Across the intersection and approximately "three houses east" of it, Crayton observed a "silver minivan sitting there." As Crayton watched, a man emerged from the darkness, went up to the passenger side of the minivan, "conversed real quickly," then "handed something to the passenger," before walking back to "wherever" he came from. The minivan drove off,

proceeding eastbound on Hampden. Crayton testified he could not see what was exchanged, and he could not clearly see the license plate of the minivan.

{¶ 7} Via police radio, Crayton informed Det. McCully, one of his other team members who traveled in another undercover vehicle, of his observations. Crayton asked McCully to follow the minivan. Crayton testified McCully responded; Crayton stated that he saw McCully approaching the intersection, traveling on E. 105th Street, and that McCully turned onto Hampden to follow the minivan.

{¶ 8} McCully testified he was to the rear of Crayton's vehicle on Hampden when he received Crayton's broadcast. Although McCully stated Crayton provided the minivan's license plate number, at the time of the hearing, McCully could not remember it.

{¶ 9} McCully testified he drove around Crayton's car, crossed E. 105th Street, and followed the minivan. McCully stated the minivan traveled approximately "half a block" before it parked on Tacoma near E. 106th Street. McCully "radioed the take-down cars" of the minivan's location. When he saw two marked police cars arrive to block the minivan, he "pulled off."

{¶ 10} Officer Todd Kilbane was driving one of the marked police cars. Kilbane testified he and his colleagues were "assisting the narcotics unit, or the vice unit, and they gave a description of a [sic] automobile, gave the

license plate, and informed us that a drug transaction had happened. One of the detectives followed the auto to Tacoma. The auto pulled over as it approached, like, 105, and we came right around the corner and activated our lights and took the car down."

**{¶ 11}** Kilbane stated he and his partner exited their patrol car "with guns drawn," and Kilbane approached the passenger side shouting, "Show me your hands." Kilbane saw the passenger, later identified as Carmichael, "shoving, looked like a plastic bag down in his waistband area." Since Kilbane "didn't know if he had a weapon or what he had," Kilbane "took him out of the car," put Carmichael up against the side of it, and "cuffed him for our safety." Kilbane stated that as he "assisted [Carmichael] in opening his legs" for a pat-down, a plastic baggie with what later proved to be crack cocaine "fell right down his pant leg onto the ground."

**{¶ 12}** As previously stated, based upon this incident, Carmichael was arrested and ultimately indicted on six counts. After he received discovery from the state, Carmichael challenged the state's intention to use the evidence by filing a motion to suppress.

**{¶ 13}** The trial court conducted a hearing on Carmichael's motion. After the detectives and the police officer testified, Carmichael presented two witnesses. One of them, Madaral Lewis, testified that he was driving the

minivan on the night of the incident. Lewis described his route of travel to Tacoma Avenue to park in front of his sister's mother's house; the record reflects he used a map of the area. Lewis testified that he had not driven on the intersection of E. 105th Street and Hampden Avenue at all.

{¶ 14} In granting Carmichael's motion to suppress evidence, the trial court relied upon this court's decision in *State v. Pettegrew*, Cuyahoga App. No. 91816, 2009-Ohio-4981, [appeal not allowed, 124 Ohio St.3d 1493, 2010-Ohio-670, 922 N.E.2d 228] and made the following pertinent comments:

{¶ 15} " * * * [T]he big tough nut issue is whether there was an articulation or a reasonable suspicion of criminal activity in the first place.

{¶ 16} " * * *

{¶ 17} " * * * It's not enough to witness a hand-to-hand transaction when you don't know what's being transacted.

{¶ 18} " * * *

{¶ 19} " * * * It's the exchange of drugs that makes it criminal. And you're still allowed to go touch somebody and exchange pencils or aspirin or whatever.

{¶ 20} * * [I]t was just a hand-to-hand between two human beings, and that's not enough to base a stop on because they could have been doing anything, including shaking hands. * * *

{¶ 21} " * * * and the question is, whether you're going to let the police stop people in a free society for any — when that's all they're seeing. And you are literally saying that [Crayton] saw a, quote, exchange. This is a man that sat here and said he couldn't read the license plate on the car. But he saw an exchange. Now, you know, that's kind of — that's heavy stuff.

{¶ 22} "I understand it's a high crime area, that's relevant. The time of night, I'm sure that's relevant. I know we have an experienced officer. But all we have is this thing he's calling a hand-to-hand, it's human contact between two people at a car. It could involve anything * * *. And there is not an articulation of reasonable suspicion of criminal activity. * * *."

{¶ 23} The state appeals from the trial court's decision and presents one assignment of error.

{¶ 24} **"I.    The trial court erred in suppressing evidence seized following a constitutional stop based on *Terry v. Ohio*."**

{¶ 25} The state argues the trial court improperly applied the law to the facts presented in this case. The state contends that as long as a police officer sees an "exchange" occur between two people, that fact, along with the other facts articulated, is enough to justify an investigative stop. Based upon the record of this case, this court disagrees.

**{¶ 26}** A motion to suppress evidence challenges the warrantless search and seizure at issue as being in violation of the Fourth Amendment of the United States Constitution. *State v. Williams*, Cuyahoga App. No. 81364, 2003-Ohio-2647, ¶7. The principal remedy for such a violation is the exclusion of evidence from the criminal trial of the individual whose rights have been violated. Id. Exclusion is mandatory when such evidence is obtained as a result of an illegal search. Id., citing *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

**{¶ 27}** Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 7, ¶8. This court accepts the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Gross*, Cuyahoga App. No. 91080, 2009-Ohio-611, ¶24. Accepting these facts as true, this court must independently determine, as a matter of law and without deference to the trial court's conclusion, whether those facts meet the applicable legal standard. *Burnside*; *Williams* at ¶8.

**{¶ 28}** The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures, unless an exception applies. Id. at ¶25. One exception to the warrant requirement is the

investigatory stop, which is permitted pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 29} This type of exception is "narrowly drawn"; it "allows a police officer without probable cause to stop and briefly detain a person if the officer has a reasonable suspicion based upon specific articulable facts that the suspect is *engaged in criminal activity*." (Emphasis added.) *State v. Franklin* (1993), 86 Ohio App.3d 101, 103, 619 N.E.2d 1182. The court in *Franklin* noted, at 104, 619 N.E.2d 1182, "In *Terry*, the United States Supreme Court set forth a dual inquiry for evaluating the reasonableness of a search conducted incident to such an investigative stop:

{¶ 30} "'[1] whether the officer's action was *justified at its inception*, and [2] whether it is reasonably related in scope to the circumstances which justified the interference in the first place.'" (Emphasis added.) Id. at 20.

{¶ 31} The initial inquiry, which the trial court faced in this case, entails a determination of whether, under the totality of the facts available to the officer at the moment of the stop, the investigating officer can point to specific and articulable facts to support his reasonable belief that a crime may be occurring; if so, the intrusion is permitted. *Franklin*, supra.

{¶ 32} In *Pettegrew*, this court stated in pertinent part as follows:

{¶ 33} "The Ohio Supreme Court has held that a *Terry* stop is valid when viewed through the eyes of a reasonable and prudent police officer on the scene who must act when the crime is unfolding. This view is defined as the totality of the circumstances. These circumstances have been defined as location, character of location, and action of the suspect or suspects (fleeing). *Regardless of the officer's lens to assess the criminal behavior, he must have a reasonable articulable suspicion before a stop is made* and the logical inference is that he *must be able to articulate what he observed* that gave rise to that suspicion.

{¶ 34} "We conclude that these facts do not satisfy the above stated legal standard. The officer failed to articulate *the basis for his* reasonable *suspicion that a crime was afoot*. He never stated that he observed the unidentified male exchange something with Pettegrew, or vice versa. He never said he saw Pettegrew's hands outside the car. He said he saw the unidentified male reach into the car, but could not describe anything other than he reached into the car. Instead, he *labeled their action* a hand-to-hand transaction or interaction without describing what they were doing. We realize that this is a close case. However, because the action of the men [was] consistent with innocent behavior, we resolve this case in favor of Pettegrew's Fourth Amendment rights.

**{¶ 35}** " * * * ."

**{¶ 36}** "The officer must be able to articulate the criminal activity that he observed. *Labeling the behavior is not sufficient as a matter of law.* The officer must be able to say he saw a hand-to-hand exchange. During the officer's testimony, he tried to explain what he meant by hands interacting, but was not clear. The officer *must be able to make sense of what he observed, especially when one person is sitting in the car, the other is on the outside, and the officer is too far away to see* anything being exchanged. The Fourth Amendment requires more than a hunch when the suspicious behavior is consistent with innocent behavior. * * *." ( Emphasis added.)

**{¶ 37}** Subsequently, in *State v. Agee*, Cuyahoga App. No. 94035, 2010-Ohio-5074 at ¶15, this court repeated the stricture that "labeling the behavior" will be insufficient for Fourth Amendment purposes. A review of the trial court's comments in this case demonstrates that the court determined Crayton was labeling what he observed, perhaps even as a pretense to justify the stop and search. Although Crayton testified he saw a "hand-to-hand" gesture that he thought could be an exchange of drugs, the court simply did not believe him. The court, as the trier of fact in ruling on a motion to suppress evidence, is free to believe all, part, or none of the testimony of each witness. *Cleveland v. Fields*, Cuyahoga App. No. 82070,

2003-Ohio-1965; see, also, *State v. Harriston* (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144, citing *State v. Antill* (1964), 176 Ohio St. 61, 197 N.E.2d 548.

{¶ 38} The court concluded Crayton's assertion was unlikely in light of his other testimony that, from his distance, he could not read the license plate of the vehicle he observed. The trial court's conclusion that Crayton's suspicion was unreasonable finds support in the contradictory testimony supplied by both McCully and Kilbane.

{¶ 39} Although Crayton testified he saw McCully's car turn onto Hampden from E. 105th Street, McCully stated positively that he was behind Crayton rather than on E.105th Street. For his part, Kilbane could not remember which special unit he was assisting that night. Kilbane also testified that as he ran toward the vehicle, he saw Carmichael "shoving" a "plastic baggie" into his waistband, but then caught himself and asserted the item Carmichael was attempting to hide might have been a weapon.

{¶ 40} Based upon the record, therefore, the stop and search of the minivan in which Carmichael was a passenger violated the Fourth Amendment. The trial court properly granted Carmichael's motion to suppress evidence, and, accordingly, the state's assignment of error is overruled.

The judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

COLLEEN CONWAY COONEY, J.,
CONCURS IN JUDGMENT ONLY;
FRANK D. CELEBREZZE, JR., P.J., DISSENTS
(SEE ATTACHED OPINION)

FRANK D. CELEBREZZE, JR., P.J., DISSENTING:

**{¶ 41}** I respectfully dissent. I would reverse the trial court's suppression of the crack cocaine retrieved from appellant by police officers on December 3, 2009. Under the totality of the circumstances, I would find that Det. Crayton had a reasonable suspicion that criminal activity "may be afoot" to justify a *Terry* stop.

**{¶ 42}** "Under *Terry*, an officer must articulate a reasonable basis for detaining an individual." *State v. Smith*, Cuyahoga App. No. 89443,

2008-Ohio-2361. In deciding whether reasonable suspicion exists, courts must examine the "totality of the circumstances" of each case in order to determine whether the detaining officer had an objective basis for suspecting criminal activity. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, citing *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044. Under this approach, police officers are permitted to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. *State v. Scales*, Cuyahoga App. No. 87023, 2006-Ohio-3946, ¶11.

{¶ 43} At trial, Det. Crayton testified, "I observed a male walk from the south side of the street up to the passenger's side of the minivan. He conversed real quickly with whoever was in the passenger's side of the car. I saw an exchange of something come out of his hand, something was handed to this person." When asked what made him believe that it was a hand-to-hand transaction, Det. Crayton stated, "I could see the male's hands into the car and something went out of his hand and then something was handed to this person." Det. Crayton testified that he concluded that a drug transaction had occurred based on his training and experience, the area's known drug activity, and the time of night when his observation was made.

{¶ 44} In *State v. Toles*, Cuyahoga App. Nos. 94886 and 94889, 2011-Ohio-217, ¶13, this court stated that, "without a firm statement from the testifying officer that a hand-to-hand exchange occurred, the legal standard found in *Pettegrew* is not met." In the case at bar, Det. Crayton clearly and affirmatively stated that he observed a hand-to-hand exchange occur in a high crime area. Despite the trial court's conclusions, *Pettegrew* does not require the officer to identify that the object being exchanged is drug related. Rather, *Pettegrew* only requires the officer to firmly state on the record that an exchange had occurred. See *Pettegrew*, at ¶22 ("We do not hold that the officer must identify what the item is, when a hand-to-hand exchange takes place in a high crime area. However, the officer must be able to say that an exchange occurred.")

{¶ 45} In light of Det. Crayton's testimony and pursuant to the appropriate standard of review for a motion to suppress, I would reverse.