[Cite as *State v. Hall*, 2017-Ohio-2682.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2016-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-177 |
| | : | |
| TAYLOR D. HALL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of May, 2017.

. . . . . . . . . . .

R. KELLY ORMSBY III, Atty. Reg. No. 0020615 by DEBORAH QUIGLEY, Atty. Reg. No. 0055455, Assistant Prosecuting Attorney, Darke County Prosecutor's Office, Appellate Division, 504 S. Broadway St., Greenville, Ohio 45331
    Attorney for Plaintiff-Appellant

RANDALL BREADEN, Atty. Reg. No. 0011453, 414 Walnut Street, Greenville, Ohio 45331
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, P. J.

{¶ 1} The State of Ohio appeals, pursuant to R.C. 2945.67(A) and Crim.R. 12(K), from the trial court's decision and judgment entry sustaining defendant-appellee Taylor D. Hall's motion to suppress evidence.

{¶ 2} In its sole assignment of error, the State contends the trial court erred in suppressing drug-related evidence found through a canine sniff of Hall's car during a traffic stop. The State argues that the sniff occurred within the amount of time deemed reasonable for a traffic stop.

{¶ 3} Suppression-hearing testimony reflects that patrolman Jeremy Towe stopped Hall's car at 1:31 a.m. on July 26, 2016. Towe, the only witness at the hearing, testified that he made the stop after watching Hall's car roll past two stop signs. Towe approached the car and made contact with Hall, the driver, and two female occupants. Towe discovered that Hall and his front-seat passenger did not have a driver's license or other identification in their possession. As a result, he asked their names and dates of birth to confirm their identities. Hall responded truthfully, but Towe misunderstood him and thought his first name was "Tyler" rather than "Taylor." The misunderstanding caused trouble with the dispatcher when Towe attempted to confirm Hall's identity. Towe returned to the stopped car and obtained Hall's social security number, which resulted in a correct identification and confirmation that Hall had a valid driver's license. This occurred at approximately 1:42 or 1:43 a.m. (Hearing Tr. at 16, 28). Towe testified that it normally takes him 12 to 13 minutes to complete a traffic ticket once he has all of the driver's information. (*Id.* at 18).

{¶ 4} While he was in the process of confirming Hall's identity, Towe requested a

canine unit to perform a drug sniff on the stopped car. After completing the identification check, Towe approached Hall and his companions and advised them that the canine unit was en route. (*Id.* at 16-17). Before the dog arrived, Towe spoke with another officer who had come to provide assistance. Towe told the officer that he did not believe Hall would consent to a search of the car. The officer advised Towe to "stall them." (*Id.* at 18, 21). After confirming Hall's identity and calling for the canine unit, Towe then did nothing to process the traffic stop for approximately eight minutes. He admitted during the suppression hearing that he just stood on the sidewalk even though he had all of the information needed to complete a citation. (*Id.* at 30). He denied stalling, however, explaining that he was deliberating about whether to issue a traffic citation or give a warning. (*Id.* at 34). The canine unit arrived at about 1:52 a.m. (*Id.* at 33). The drug sniff started at about 1:54 a.m. The dog alerted and made a positive "hit" on drug-related contraband, including precursors for manufacturing methamphetamine, just before 1:55 a.m. (*Id.*).

{¶ 5} Hall was indicted on two charges: illegal assembly or possession of chemicals to manufacture drugs and possession of criminal tools. (Doc. #1). He moved to suppress the evidence against him, arguing among other things that Towe did not diligently process the traffic stop. (Doc. #10). Based on the evidence presented at the suppression hearing, the trial court sustained Hall's motion. In relevant part, the trial court reasoned:

> Several facts in this case are subjectively problematic regarding the promptness of the traffic stop. First, there was a delay of approximately 12 minutes in obtaining the Defendant's correct name. When advised of

identification problems by dispatch, Ptl. Towe should not have waited but should have more promptly acted to clarify the Defendant's name. Second, Ptl. Towe was apparently told to "stall for more time" after the other suspicions about the vehicle seemed to prompt the interest in a free air sniff. These other suspicions were not pertaining to the traffic stop and caused actual delay in completing the traffic stop. Third, from approximately 1:37 a.m. until 1:52 a.m., there were no steps taken to continue writing the traffic citation or to process the traffic stop; this time was devoted to steps in furtherance of the K-9 sniff.

The Court finds credible the testimony of Ptl. Towe that the usual time for completing a traffic stop with issuance of a citation is 12-13 minutes. "Requesting a driver's license, registration, rental papers, running a computer check thereon, and issuing a citation do not exceed the scope of a traffic stop for a speeding violation." *United States v. Hill*, 195 F.3d 258 (6th Cir. 1999). Under a typical scenario, the traffic stop should have taken from 1:31 a.m. until 1:44 a.m. Even if the misidentification delay from 1:31 a.m. until 1:41 is attributed to the Defendant, which this Court is not willing to do, the traffic stop still should have ended by 1:53 a.m. – or even sooner if processing the traffic citation had occurred while the identification was being resolved.

The free air sniff by the K-9 did not commence until at least 1:54 a.m. The additional questioning and detention of the Defendant which ultimately led to the discovery of the precursors occurred even later. The time of delay

under these circumstances is an intrusion of the Defendant's right to be free from unreasonable search and seizure related to a traffic stop.

The Court notes the relative inexperience of Ptl. Towe. He does not appear to have acted with any nefarious motive. The injection from other law enforcement sources of the suspicions about the Defendant's vehicle and the suggestion to stall for time subtly influenced and delayed Ptl. Towe's duty to complete a traffic stop. Ptl. Towe did not independently develop suspicion of illegal drug-related conduct during the traffic stop; only from the delay to obtain a K-9 free air search did any suspicion materialize that drug-related conduct was afoot.

In conclusion, the "free air" sniff was constitutionally improper since the time during which the sniff occurred was outside the amount of time deemed reasonable for a traffic stop. The traffic stop was not expediently completed. The delay is construed as unreasonable and a violation of both the United States and Ohio constitutions.

(Doc. #14 at 7-8).

{¶ 6} On appeal, the State contends the trial court erred in sustaining the suppression motion. It argues that the time needed to confirm Hall's identity should not be held against Towe because the misunderstanding was reasonable and was attributable in part to Hall's own failure to carry a driver's license. The State further asserts that Towe acted diligently in confirming Hall's identity, which was not accomplished until approximately 1:43 a.m. The State also notes that Towe did not obtain Hall's address until 1:44 a.m. It argues that the officer could not start processing a traffic citation until

that time. Because the canine unit arrived roughly 10 minutes later, at 1:54 a.m., the State insists that the drug sniff occurred within the 12-13 minute time period that it normally took Towe to issue a citation. That being so, the State reasons that the drug sniff did not unlawfully extend the stop.

{¶ 7} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Internal citations omitted) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *see also State v. Greene*, 2d Dist. Montgomery No. 26138, 2015-Ohio-2060, ¶ 19.

{¶ 8} Here the facts, as set forth by Towe, are undisputed. The issue the State raises is a legal one, to wit: whether based on those facts the traffic stop improperly was extended to facilitate the drug sniff. "When an officer detains a motorist for a traffic violation, the stop should delay the motorist only for the amount of time necessary to issue a citation or warning." *State v. Hill*, 2d Dist. Montgomery No. 26345, 2016-Ohio-3087, ¶ 9, citing *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E .2d 1282, ¶ 12. "The reasonable stop time includes the amount of time it takes to conduct a computer check on the driver's license, registration, and vehicle plates." *Id.* " 'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate

the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *Id.*, quoting *Batchili.*

{¶ 9} In *State v. Matheney*, 2d Dist. Montgomery No. 26876, 2016-Ohio-7690, we held that a canine sniff did not unreasonably extend the time for a traffic stop where the dog alerted 24 to 26 minutes after the stop. Although the officer involved testified that it normally took him 12 to 15 minutes to issue citations, the defendant's actions prolonged the stop by forcing the officer to conduct a pat down for his safety. *Id.* at ¶ 30. In finding the duration of the stop permissible, we reasoned:

> * * * [I]n the time before the canine sniff was conducted, Officer Sanford remained busy preparing Matheny's traffic citation, which he had not yet completed when the canine unit arrived. Moreover, under the specific facts of this case, we do not find that 24 to 26 minutes is an unusual length of time for the traffic stop in question given that Matheney engaged in conduct warranting a pat-down search.
>
> Because Sanford was not simply waiting for the canine unit to arrive, but rather running Matheney's information through his computer, patting down Matheney for weapons after his abrupt movement toward the back seat of the vehicle, and preparing Matheney's traffic citations, we find that under the circumstances, Sanford diligently conducted the investigation within a reasonable amount of time. Accordingly, under the totality of the circumstances, we do not find that Matheney's detention was extended beyond what was reasonably necessary to resolve the issues associated with the traffic stop and to issue a traffic citation.

*Id.* at ¶ 32.

{¶ 10} In *Rodriguez v. United States*, __ U.S. __, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), the United States Supreme Court concluded that the Fourth Amendment does not prohibit unrelated investigative activities during a traffic stop, including the use of a canine unit, provided those activities do not prolong the stop. *Id.* at 1615 ("An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But * * * he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."). Notably, the *Rodriguez* majority explicitly rejected the government's argument that an officer may "incrementally" prolong a stop to perform a drug sniff provided he "is reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable in relation to the duration of other stops involving similar circumstances." *Id.* at 1616. The Court emphasized that reasonableness "depends on what the police in fact do," and diligence is measured "by noting what the officer actually did and how he did it." *Id.* The "critical question" in each case is "whether conducting the sniff 'prolongs'—i.e., adds time to—'the stop.' " *Id.*

{¶ 11} With the foregoing standards in mind, we see no error in the trial court's suppression ruling. We agree with the State that confirming Hall's identity was a necessary part of the traffic stop. We also accept that the misunderstanding regarding Hall's name was reasonable and that Officer Towe acted appropriately to clarify the issue. *Cf. State v. Nevarez-Reyes*, 2d Dist. Montgomery No. 27047, 2017-Ohio-2610, at ¶ 27 (recognizing that the Fourth Amendment allows for reasonable mistakes of fact). Therefore, we are unconvinced that the time it took to confirm Hall's identity impermissibly

prolonged the stop. Even giving Towe the benefit of that additional time, however, the trial court correctly concluded that the traffic stop was not "expediently completed" and that the officer delayed it to obtain a canine sniff.

{¶ 12} Towe confirmed Hall's identification and the existence of a valid driver's license at approximately 1:42 or 1:43 a.m. The police dog alerted to the presence of drug-related evidence at approximately 1:55 a.m. Even if the canine sniff occurred within the 12 to 13 minutes that it typically took Towe to issue a citation, the officer did nothing to process the traffic stop for approximately eight minutes while he waited for the canine unit to arrive. Although he claimed to have been deliberating about whether to issue a citation or a warning, the trial court found that a second officer's "suggestion to stall for time subtly influenced and delayed Ptl. Towe's duty to complete the stop." (Doc. # 14 at 8). For this reason, the present case is distinguishable from *Matheney*, in which we noted that the officer "was not simply waiting for the canine unit to arrive[.]" *Matheney* at ¶ 32.

{¶ 13} The United States Supreme Court made clear in *Rodriguez* that an officer may not prolong a traffic stop to perform a drug sniff even if the "overall duration of the stop remains reasonable in relation to the duration of other stops involving similar circumstances." *Rodriguez* at 1616. As noted above, reasonableness "depends on what the police in fact do," and diligence is measured "by noting what the officer actually did and how he did it." *Id.* Here Towe acted neither reasonably nor diligently by doing nothing for eight minutes while awaiting a canine unit. Conducting the sniff in this case indisputably added time to the stop. Therefore, Towe unreasonably prolonged the stop, and the trial court properly suppressed the evidence.

{¶ 14} The State's assignment of error is overruled, and the judgment of the Darke

County Common Pleas Court is affirmed.

. . . . . . . . . . . .

WELBAUM. J., concurs.

DONOVAN, J., concurring:

{¶ 15} I agree with the well-reasoned opinion of the majority. I write separately merely to note that I would also defer to the trial court's finding that the ten minute delay, to resolve the identification issue, should not be attributed to Hall.

. . . . . . . . . .

Copies mailed to:

R. Kelly Ormsby, III
Deborah S. Quigley
Randall Breaden
Hon. Jonathan P. Hein