FROELICH, J., dissenting.
{¶ 25} I disagree with the majority's conclusion that "the stop had not extended beyond the time that would otherwise reasonably have been required to complete" the traffic stop. I would hold that the police officer unlawfully extended the time necessary to complete the traffic stop, and I would affirm the trial court's ruling on the motion to suppress.
{¶ 26} In Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), a K-9 officer stopped Rodriguez for driving on the highway shoulder, a violation of Nebraska law. After checking Rodriguez's and his passenger's identification and issuing a warning to Rodriguez, the officer asked Rodriguez for permission to walk a canine around the vehicle. When Rodriguez refused, the officer detained him until a second officer arrived, and then the officer walked a canine around the vehicle. The dog altered to the presence of drugs in the vehicle. Seven or eight minutes elapsed between the issuance of the warning and when the dog alerted.
{¶ 27} The United States Supreme Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th [e] mission' of issuing a ticket for the violation." Rodriguez , 135 S.Ct. at 1612.
{¶ 28} Recently, in State v. Hall , 2017-Ohio-2682, 90 N.E.3d 276 (2d Dist.), we addressed whether the trial court had erred in suppressing drug-related evidence found through a canine sniff during a traffic stop. In Hall , the officer requested a canine unit while in the process of confirming Hall's identity. After confirming Hall's identity, the officer "did nothing to process the traffic stop for approximately eight minutes," even though he had all of the information that he needed to complete a citation. After the dog arrived, it alerted to the presence of drug-related contraband. The trial court suppressed the evidence. On appeal, the State argued that the sniff had occurred within the amount of time (12-13 minutes) deemed reasonable for a traffic stop. The State thus claimed that the drug sniff did not unlawfully extend the stop. We affirmed the suppression ruling.
{¶ 29} In rejecting the State's argument in Hall , we stated that the United States Supreme Court "made clear in Rodriguez that an officer may not prolong a traffic stop to perform a drug sniff even if the 'overall duration of the stop remains reasonable in relation to the duration of other stops involving similar circumstances.' "
*1030 Hall at ¶ 13, quoting Rodriguez at 1616. We explained:
Notably, the Rodriguez majority explicitly rejected the government's argument that an officer may "incrementally" prolong a stop to perform a drug sniff provided he "is reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable in relation to the duration of other stops involving similar circumstances." [ Rodriguez ] at 1616. The Court emphasized that reasonableness "depends on what the police in fact do," and diligence is measured "by noting what the officer actually did and how he did it." Id. The "critical question" in each case is "whether conducting the sniff 'prolongs'-i.e., adds time to-'the stop.' " Id.
Hall at ¶ 10.
{¶ 30} I agree with the majority that, since Rodriguez , Ohio courts, including this district, have employed a standard that focuses on the totality of the circumstances and whether the officer diligently pursued the traffic-related purpose of the stop.
{¶ 31} However, the majority holds that the officer lawfully asked Mee to exit his vehicle for a free-air sniff and pat down, because "the stop had not extended beyond the time that would otherwise reasonably have been required to complete" the traffic stop. (Emphasis added; see ¶ 22.) This does not consider that the officer's actions actually prolonged, i.e., added time to, the stop, as Rodriguez and Hall prohibit, and, instead, looks solely at whether the officer's request occurred within an objectively reasonable time for a typical traffic stop.
{¶ 32} Here, Officer Spinks lawfully stopped Mee for a marked lane violation. He alerted dispatch as to his location and the vehicle's registration. The officer approached the vehicle, identified himself, and explained the reason for the stop. He asked for and received the driver's license and registration from Mee and identification from the two passengers. Officer Spinks asked Mee where he was coming from and whether he had consumed any alcohol. Mee answered negatively, and the officer did not smell any alcohol in the vehicle. He next asked all the occupants whether there were any drugs in the car and again received negative responses.
{¶ 33} Officer Spinks then returned to his cruiser and ran all three occupants' and the vehicle's information through several computer databases. The only thing that came back was that one of the passengers was "under an in-State drug suspension or he had an in-State drug suspension in 2014." Officer Spinks testified that Kettering's K-9 officer, Officer Maloney, arrived while he (Spinks) was looking at the reports; Spinks had not requested a K-9 unit, and Maloney had come because he had been nearby. Spinks testified that, after seeing the information about the passenger and "for the fact that Patrolman Maloney was already there, we would be able to run a sniff on the * * * car since it had only been several minutes." (Supp.Tr. at 14.)
{¶ 34} Rather than writing a citation or warning, Spinks decided that he "was going to ask them for consent to search the vehicle." Officer Spinks re-approached Mee's vehicle and asked if anyone "had any drugs or anything illegal in the vehicle," and in response to a negative answer from Mee, "asked him if he would consent to a search to [sic] the vehicle." When Mee said "he just wanted to go home," Officer Spinks "informed him that if he wasn't going to consent to a search, we had the K-9 officer there so we were going to conduct a free-air sniff on the car" and had all the occupants step out. (Id. )
*1031 {¶ 35} Officer Spinks was permitted to ask Mee whether he was carrying any illegal contraband in the vehicle. See State v. Robinette , 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). However, for Officer Spinks to cease processing the traffic violation and assist with the canine sniff, he was required to have a reasonable suspicion of criminal activity beyond the traffic violation that led to the stop. As stated in Rodriguez , "Like a Terry stop, the tolerable duration of police inquires in the traffic-stop context is determined by the seizure's 'mission'-to address the traffic violation that warranted the stop and to attend to related safety concerns." (Citations omitted.) Rodriguez at 1614.
{¶ 36} Here, the officers had no reasonable articulable suspicion that Mee or any of his passengers were engaged in criminal activity, other than Mee's having committed the traffic offense. The officer's contact with Mee raised no reasonable articulable suspicion of criminal activity. For example, it was not a high crime area, there was no odor of alcohol or drugs, the driver or passengers did not seem overly nervous, there were no furtive movements, the license plates were local and matched the vehicle, there was no attempt to flee from the stop, Mee had no warrants or prior driving or criminal record, and there was no rowdiness, hand-to-hand motions, or uncooperativeness. Officer Spinks acknowledged during his testimony that, if the dog did not alert during the planned free-air sniff, "I have no reason to detain Mr. Mee any longer other than to write out the citation." Accordingly, in my view, Officer Spinks should not have ceased working on completing the traffic-related matter in order to conduct a dog sniff of Mee's vehicle.
{¶ 37} In fact, the dog sniff never occurred, because the officers were told by one of the passengers that the treats in the vehicle had marijuana in them, thus justifying a search of the vehicle. The majority concludes that the drugs were located in such a short amount of time that Officer Spinks would not have had time to complete the citation, even if he had diligently completed a traffic citation.
{¶ 38} I recognize that the duration of the stop and the short delay attendant to the anticipated dog sniff make this case more difficult. However, the fact that the total time involved in the stop perhaps would not have exceeded the "average" time for the straight-forward traffic stop this was does not negate or justify that it was unnecessarily prolonged by Officer Spinks's decision, without any reasonable and articulable suspicion, to look for drugs.
{¶ 39} In Rodriguez and Robinette , the citation/warning had been given and the officer then unlawfully extended the stop by asking for permission to search. In contrast to those cases, Officer Spinks did not begin to write out the citation; instead, he asked for permission to search the vehicle, and when that was denied, he asked the driver and passengers to step out of the car in preparation for the dog sniff. Rodriguez states, however, that "[t]he critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, * * * but whether conducting the sniff 'prolongs'-i.e., adds time to-'the stop[.]' " In this case, the officer took actions, without a reasonable suspicion of additional criminal activity, that prolonged the traffic stop; the fact that it was prior to his issuing a citation should not be controlling.
{¶ 40} I do not suggest that Officer Maloney could not have conducted the dog sniff. A dog sniff is not a search within the meaning of the Fourth Amendment, and nothing prevented Officer Maloney from conducting a dog sniff while Officer Spinks completed the traffic citation.
*1032 {¶ 41} I would affirm the trial court's decision.