FROELICH, J., dissenting:
{¶ 21} I agree with the majority that the officers lawfully found the gun in Tims's vehicle and that the trial court did not err in denying the motion to suppress the weapon. However, I disagree that Haynes's detention was not extended beyond the time required to complete the stop of Tims. I would hold that Haynes's statements were in response to comments by the police that would reasonably elicit an incriminating response while he was unlawfully detained and that those statements should have been suppressed.
{¶ 22} The report of an active warrant provided reasonable suspicion to justify Officer Maloney's pulling up behind Tims's vehicle, verifying Tims's identity, and confirming the warrant for her arrest. The officers were entitled to conduct a dog sniff of Tims's vehicle without infringing upon the Fourth Amendment, and the dog's alert justified a search of the vehicle. The police lawfully located a firearm during that search.
{¶ 23} The critical issue with respect to Haynes, however, is how long the passenger (Haynes) could reasonably be detained by the officers based on the stop for the driver's warrant.
{¶ 24} The duration of an investigatory motor vehicle stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable. State v. Brown , 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, 2004 WL 1730132, ¶ 13, citing State v. Chatton , 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984). We stated in Brown :
When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits *350 law enforcement officers to detain those passengers for the duration of the lawful detention of the driver. In addition, the Supreme Court has held that, due to concerns for officer safety and the minimal intrusion for the driver and passengers, the officers may order both the driver and the passengers to exit the vehicle. Maryland v. Wilson (1997), 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41. In addition, the officers may request identification from the passengers without running afoul of the Fourth Amendment. As we stated in [State v.] Morgan , [2d Dist. Montgomery No. 18985, 2002-Ohio-268, 2002 WL 63196],"[a] request for identification, in and of itself, is not unconstitutional, and is ordinarily characterized as a consensual encounter, not a custodial search. The routine questioning of [the passenger] constituted a minimal intrusion. 'Since detention, not questioning, is the evil at issue, it has been held that, so long as the traffic stop is valid, any questioning which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention.' " Id. (citations omitted).
Brown at ¶ 14.
{¶ 25} Law enforcement officers may detain the driver and passengers only for the time necessary to complete the reason for the stop. "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015). Rodriguez made clear "that an officer may not prolong a traffic stop to perform a drug sniff even if the 'overall duration of the stop remains reasonable in relation to the duration of other stops involving similar circumstances.' " State v. Hall , 2017-Ohio-2682, 90 N.E.3d 276 (2d Dist.), quoting Rodriguez , 135 S.Ct. at 1616.
{¶ 26} The investigatory stop of Tims and Haynes did not end with the writing of a citation, but with Tims's arrest on an outstanding warrant. Within one minute of Sergeant Lambert's arrival at the scene, Tims was removed from her vehicle and handcuffed. Approximately a minute and one-half later, Haynes was asked to exit the vehicle, and he was patted down by an officer at that time. Shortly thereafter, the warrant for Tims was confirmed, and Tims was placed in Lambert's cruiser.
{¶ 27} Tims was under arrest for the outstanding warrant, and the officers had no reasonable articulable suspicion that Tims or Haynes was presently engaged in criminal activity. At this juncture, the purpose of the investigatory stop was complete. In my view, the officers should have returned Haynes's driver's license and allowed him to leave, if he wished.
{¶ 28} The majority relies upon State v. Caulfield , 2013-Ohio-3029, 995 N.E.2d 941 (2d Dist.) to support the conclusion that Haynes's continued detention was permissible, because the search of Tims's vehicle was contemporaneous with her arrest.
{¶ 29} In Caulfield , the vehicle in which Caulfield was a passenger was stopped after an officer observed that the license plate was completely obstructed by snow. The officer obtained identification from Caulfield and the driver. The LEADS system indicated, among other things, that a warrant had been issued for the driver's arrest; no information was returned on Caulfield. The officer called for back-up, who arrived on the scene a few minutes later. The original officer arrested the *351 driver pursuant to the warrant, and the driver gave consent for the deputies to search his vehicle. The driver was taken to one officer's cruiser, while the other officer approached Caulfield, who was still seated in the front-passenger seat, and asked her to exit the vehicle for the search. At the officer's instruction, Caulfield left her purse in the vehicle. A search of the purse revealed unknown drugs and paraphernalia, and additional drugs and drug paraphernalia were subsequently located on Caulfield.
{¶ 30} On appeal from her conviction, Caulfield claimed, in part, that she was unlawfully detained after the driver's arrest. In rejecting her claim, we noted the general principle in State v. Williams , 2d Dist. Montgomery No. 22924, 2009-Ohio-1627, 2009 WL 891784, that "the continued detention of the driver during a lawful search is not unreasonable if it is contemporaneous with the arrest [of the passenger]." Caulfield at ¶ 19. Although we noted some factual differences between Caulfield's situation and Williams , we stated that, "[j]ust like the driver in Williams , Caulfield's ability to continue her means of travel was interrupted, and she was detained as a result of the driver's arrest and the lawful search of the vehicle." Caulfield at ¶ 18. Applying Williams , we held:
In this case, the search of the vehicle was conducted contemporaneously with the driver's arrest and the search was lawful pursuant to the driver's consent. The stop had not ended after the driver's arrest because the police had to continue to control the scene for purposes of searching the vehicle. Caulfield was detained incident to the lawful search of the vehicle. Accordingly, Caulfield's detention was reasonable and not illegal.
Caulfield at ¶ 19.
{¶ 31} Unlike in Caulfield , where the vehicle was stopped for a traffic violation (obstructed license plate), Tims's vehicle was stopped solely due to the outstanding warrant. The arrest of Tims resolved the reason for the investigatory stop in this case, whereas the officer in Caulfield had not resolved the basis for the stop-the obstructed license plate-when he learned that the driver had an outstanding warrant and placed the driver under arrest. Consequently, in Caulfield , the officers' request to search the vehicle and the driver's consent to the search occurred during the continuing stop for the obstructed license plate. In contrast, when the officers spoke with Tims about whether she would consent to a search of her vehicle, Tims was under arrest for the outstanding warrant and she was seated in a police cruiser; the basis for the stop was concluded.
{¶ 32} Moreover, unlike in Caulfield , Haynes's and Tims's travel was not interrupted by the stop, i.e., they were not en route from one location to another. Tims's vehicle was located in a legal parking space in Tims's apartment complex, having just arrived at the apartment complex. There was nothing inherent in the circumstances that justified Haynes's continued detention at the scene following Tims's arrest.
{¶ 33} The officers had no reasonable suspicion that drugs or other contraband were located in Tims's vehicle. In fact, the officers indicated that they wanted to search her car merely because of the drug-related nature of the warrant. Tims did not consent to a search. In the absence of reasonable articulable suspicion of criminal activity and with the arrest of the driver of a lawfully parked vehicle, the officers had no reasonable basis to continue detaining Haynes as part of an investigatory stop. See State v. Robinette , 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). The fact that Officer *352 Maloney could lawfully walk his canine around Tims's vehicle after Tims's arrest does not make the continued investigatory detention of Haynes lawful.
{¶ 34} The majority asserts that Haynes was voluntarily on the scene, because Tims had asked him (after her arrest while she was in the back of Lambert's cruiser) if he would take her personal items from her vehicle. However, the trial court found that Haynes "reasonably believed he was not free to leave: Off. Maloney never advised Defendant to this effect and never returned his identification to him." This factual finding is supported by the record, and there is no evidence that Haynes remained at the scene voluntarily. Shortly before he was handcuffed, Haynes agreed to Tims's request that he take her personal items, but he was not standing by Lambert's vehicle on his own accord. The officers had not returned his driver's license to him, and they had directed him to stand by the cruiser during the open-air sniff and the search of the vehicle. At no point was Haynes's encounter with the officers consensual.
{¶ 35} I would hold that any statements that Haynes made to the officers after Tims's arrest should have been suppressed, because the officers had unlawfully prolonged the detention of Haynes in order to perform a drug sniff of Tims's vehicle.
{¶ 36} If Haynes were lawfully detained by the officers during the dog sniff and subsequent search of Tims's vehicle, Haynes's statement regarding his ownership of the gun was made while he was in custody and was the product of interrogation.
{¶ 37} In its decision, the trial court found that Haynes was "certainly not free to leave," and that officer safety was not the reason the officers handcuffed Haynes. These combine for an implicit finding that Haynes was in custody when he was handcuffed. The trial court concluded, however, that Haynes's admission that he owned the gun was a spontaneous statement that was not in response to any questioning from the officers.
{¶ 38} Miranda warnings are required only when a suspect is subjected to both custody and interrogation. State v. Martin , 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 88. " 'Interrogation' includes express questioning as well as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " State v. Strozier , 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 20 (2d Dist.), quoting Rhode Island v. Innis , 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "Interrogation" must reflect "a measure of compulsion above and beyond that inherent in custody itself." Innis , 446 U.S. at 300, 100 S.Ct. 1682.
{¶ 39} "Police officers are not responsible for unforeseeable incriminating responses." State v. Waggoner , 2d Dist. Montgomery No. 21245, 2006-Ohio-844, 2006 WL 441622, ¶ 14 ; Strozier at ¶ 20. "A suspect who volunteers information, and who is not even asked any questions, is not subject to a custodial interrogation and is not entitled to Miranda warnings." State v. Fair , 2d Dist. Montgomery No. 24120, 2011-Ohio-3330, 2011 WL 2584234, ¶ 39, citing State v. McGuire , 80 Ohio St.3d 390, 401, 686 N.E.2d 1112 (1997).
{¶ 40} The officer did not directly ask Haynes if he owned the gun. However, the record does not support a conclusion that Haynes's statement regarding his ownership of the gun was spontaneous. Haynes's statement was made while the officers were in the process of handcuffing him, *353 and the officers indicated that he would remain handcuffed until they determined who owned the gun; Haynes's response about the gun was reasonably foreseeable. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Here, the State did not meet its burden.
{¶ 41} I would reverse the trial court's suppression as to Haynes's statement and remand for further proceedings.