[Cite as *State v. Harris*, 2021-Ohio-3200.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                                          No. 109997

    v.                                :

CURTIS HARRIS,                          :

    Defendant-Appellant.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED; REMANDED
**RELEASED AND JOURNALIZED:** September 16, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-642271-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Poula E. Hanna, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert B. McCaleb, Assistant Public Defender, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Curtis Harris appeals the trial court's denial of his motion to suppress. For the reasons set forth below, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

{¶ 2}   On July 20, 2019, Officer Michael Samijlenko ("Samijlenko") was on patrol for the City of Parma Police Department for traffic enforcement. Samijlenko observed a 2014 red Lincoln MKZ with dark tinted windows traveling northbound on State Road.  Samijlenko believed that the MKZ's windows were more darkly tinted than allowed by law.  As Samijlenko followed the vehicle, he conducted a BMV registration check on the vehicle's temporary registration tag and learned that Curtis Harris ("Harris"), the owner, was on parole.

{¶ 3}   Samijlenko's cruiser was equipped with a dashboard camera which is triggered when the emergency lights of the cruiser are activated and records 30 seconds of video prior to the activation of the lights.  After Harris, the MKZ driver, changed lanes without using a turn signal, Samijlenko activated his lights to initiate a stop based on the lane violation.  The police cruiser's dashboard camera recorded the lane violation.  Harris conceded that the video showed a lane violation.

{¶ 4}   Harris pulled his car over to the side of the road and parked. Samijlenko left his police cruiser and approached the passenger side of the parked MKZ.

> [F]or officer's safety I went on the passenger's side because I could not see inside the vehicle.
>
> Q.  Okay.
>
> A.  I requested the operator roll down the windows.  He rolled down the windows.  That's when I observed furtive movements.
>
> Q.  Okay.  So at that point in time you come up.  You can't see in the car at all.  You actually have him put down all four windows, correct?

A. Yes, sir.

**{¶ 5}** Samijlenko described the furtive movement as follows:

I believed that the operator, or I observed the operator reaching between his legs and then towards his right side as I was approaching the car, and I believed that he was trying to conceal something, whether it be a weapon or narcotics.

**{¶ 6}** However, Samijlenko's description of these events is not consistent in the record. Samijlenko testified several times that he could not see inside the vehicle. However, Samijlenko also testified that he saw the "furtive movement" as he was approaching Harris' car. "[Y]ou saw him moving while you're approaching the car on the passenger's side? A. Yeah." Further, Samijlenko sometimes described the movement as a single furtive movement "his hands were not on the wheel, and he was making the furtive movement" but also stated that Harris made "several furtive movements."

**{¶ 7}** Samijlenko testified that he observed evasive driving behavior. There was no evidence of any infraction other than the lane change and the video does not indicate anything suspect in Harris's driving other than that lane change. Samijlenko conceded at the hearing that there was "no crime committed" other than the traffic violation.

**{¶ 8}** Samijlenko was heard on the video directing Harris to keep his hands on the wheel in view of the officer. As soon as Samijlenko reported the stop, the Parma Police Department dispatched backup according to its standard procedures. Accordingly, Officers Walsh and Green arrived shortly after Samijlenko's stop of the MKZ. Samijlenko testified that the reason that he asked for a K9 officer was for

"criminal apprehension." However, Samijlenko was presumably aware that as soon as he reported the stop, the Parma Police Department would dispatch backup to him as a matter of policy. Thus, Samijlenko appears to be less than candid about his reason for requesting the K9 officer.

{¶ 9} At this point, Samijlenko explained the nature of the stop to Officer Walsh and stated: "Well, we're just going to wait for [Officer Bernow] then[.]" A minute and a half later, Samijlenko stated: "All right. I'm just going to start writing this ticket, and when [Officer Bernow] gets here he gets here."

{¶ 10} After Officer Bernow and K9 Beny arrived, Samijlenko asked him to conduct a sniff test on the MKZ with his Beny. There is no evidence of any discussion with Bernow concerning his presence for "criminal apprehension." Rather, Samijlenko immediately requested Bernow test the MKZ for drugs. Bernow walked Beny around the vehicle twice and Beny alerted, indicating that he detected the presence of narcotics. At this point, Samijlenko removed Harris from the car and conducted a pat down while Bernow searched the car.

{¶ 11} The following timeline is based on the dashboard camera recording. Samijlenko observed the lane violation at or around 11:13 p.m. and initiated the stop. Samijlenko requested the assistance of the K9 officer at about 11:15 p.m. The video records Samijlenko talking with Officer Walsh at around 11:17 p.m. Based on the audio, Walsh and Green arrived during Samijlenko's conversation with Harris. As Walsh and Green arrive, Samijlenko states: "Well, we're just going to wait for [Bernow] then[.]" At 11:18 p.m., Samijlenko explains the reasons for the traffic stop

to Walsh and Green. After a roughly thirty-second explanation to Walsh and Green, Samijlenko states: "All right. I'm just going to start writing this ticket, and when [Bernow] gets here he gets here." Officer Bernow arrived on scene by 11:22 p.m. At this point, Samijlenko was working on the traffic citation but could not recall how close he was to completing the citation. At 11:24 p.m., Officer Bernow and Beny conducted the sniff of Harris' vehicle.

{¶ 12} In his search of the car, Benrow recovered a small amount of marijuana from the passenger rear door tray. Samijlenko for his part discovered a firearm on Harris' person during the pat down. Harris was on parole for a previous felony conviction and the serial number of the firearm had been defaced. A Cuyahoga County Grand Jury indicted Harris on four counts: 1) Having Weapons Under Disability with one- and eighteen-month firearm specifications; 2) Improperly Handling Firearms in a Motor Vehicle; 3) Carrying a Concealed Weapon; and 4) Possessing a Defaced Firearm.

{¶ 13} Harris filed a motion to suppress in the trial court and a hearing was held. Counsel withdrew and new counsel was assigned who also filed a motion to suppress and a second hearing was held. On September 3, 2020, the trial court denied Harris' motion to suppress after the second hearing stating:

> Thank you. I want to thank counsel for their pleadings, for their arguments. You both did a wonderful job. I am grateful for that.

> Listening to the totality of the evidence here, considering all of it, I do believe that it has been established that there was a reasonable articulable suspicion to stop the vehicle.

I further believe that that is not disputed. But further, that based on the testimony of the officer, it being nighttime, personal safety, furtive gestures, the suspicion of what this may all mean, that there was a reasonable articulable suspicion to search the vehicle. The motion is denied.

{¶ 14} The trial court rejected the tint level of the windows as being illegal. "I'm dismissing the tintometer, whatever it is, as I'll call it loosely junk science. There's nothing to support it."

{¶ 15} It is difficult to parse the trial court's judgment. As noted by the appellant, the fundamental issues are whether the stop was extended and if so, whether that extension was justified by reasonable suspicion. Instead, the trial court couched the issue as to whether there was reasonable suspicion to search the vehicle. Searching the car required probable cause while extending the stop requires reasonable suspicion. *See State v. Vega*, 154 Ohio St.3d 569, 2018-Ohio-4002, 116 N.E.3d 1262, ¶ 15-17.

{¶ 16} After the trial court denied his motion to suppress, Harris pleaded no contest to the charges. The trial court sentenced Harris to 18 months mandatory incarceration on the firearm specifications ONLY, which were found to merge, and further, placed appellant under community control sanctions for a period of one year on each count.

**Law and Analysis**

{¶ 17} Harris appeals and assigns the following error for our review:

ASSIGNMENT OF ERROR NO. 1: THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS

{¶ 18} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).

{¶ 19} The burden of initially establishing whether a search or seizure was authorized by a warrant is on the party challenging the legality of the search or seizure. *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988). Once a warrantless search is established, the burden of persuasion is on the state to show the validity of the search. *State v. Kessler*, 53 Ohio St.2d 204, 207, 373 N.E.2d 1252 (1978). Thus, the state had the burden below to establish the reasonableness of the search.

{¶ 20} Appellant contends that the assignment of error depends on two connected issues: First, was the initial stop unreasonably extended beyond the time required to issue the citation and second, if the stop was extended, then was that extension justified by reasonable suspicion.

> [A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond

the time reasonably required to complete the mission of issuing a ticket for the violation.

*Rodriguez v. United States*, 575 U.S. 348, 350-351, 125 S.Ct. 1609, 191 L.Ed.2d 492 (2015) (alterations and quotations omitted).

{¶ 21} Samijlenko stood by and waited until assistance arrived in the form of Officers Walsh and Green. Thus, the stop was delayed longer than was necessary to issue the citation as Samijlenko waited for backup to arrive. The only justifications for extending the stop by the state are the "furtive movement," the tinted windows, and evasive driving. However, as noted above, the trial court rejected the state's evidence on window tint. The video does not show any "evasive" driving other than the lane change.

{¶ 22} This leaves only the alleged "furtive" movement or movements. At no point in the record does Samijlenko explain what made the movement, or movements, furtive. Presumably, Samijlenko would not describe a driver opening a glove compartment to retrieve a registration as a "furtive" movement. The state, which bore the burden of proof, never explained what precisely made the movements furtive as opposed to normal. Nor did the state consistently explain when or even how many furtive movements Harris made.

{¶ 23} The state, therefore, did not produce any evidence to support the extension of the stop. There is only the vague, contradictory testimony concerning the furtive movement or movements. There is no credible evidence in the record supporting the existence of these movements or how or when they were observed.

{¶ 24} Even if we agreed with the trial court that the officer saw these "furtive" movements or movements, this is insufficient to establish reasonable suspicion to extend the stop. "'[F]urtive movements alone are not sufficient to support reasonable suspicion of criminal activity in high-crime areas.'" *State v. James*, 8th Dist. Cuyahoga No. 106661, 2018-Ohio-5033, ¶ 24 (quoting *State v. Christian*, 8th Dist. Cuyahoga Nos. 105601 and 105602, 2018-Ohio-957; other citations omitted).

{¶ 25} Accordingly, there was no reason for Samijlenko to delay writing the citation. No evidence was introduced as to how long it would ordinarily take for Samijlenko to complete a citation. The state cannot justify the reasonableness of the delay in writing the citation based on the argument that had Samijlenko diligently written the citation, he would have not finished by the time that Officer Bernow arrived anyway. *State v. Hall*, 2017-Ohio-2682, 90 N.E.3d 276, ¶ 6 and 12 (2d Dist.) (rejecting a nearly identical argument).

{¶ 26} Thus, the state did not carry its burden to show that the stop was not extended. Accordingly, the trial court erred in determining that reasonable suspicion supported extending the traffic stop to wait for the arrival of the K9 officer.

{¶ 27} Additionally, Harris contends in his reply brief that in any event the search of the car cannot be premised on the alert of K9 Beny. In light of our reversal of the trial court's ruling on other grounds, we need not address this argument.

{¶ 28} Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, JUDGE

ANITA LASTER MAYS, P.J., and
MARY EILEEN KILBANE, J., CONCUR