[Cite as *State v. Thobe*, 2023-Ohio-1431.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 2-22-25

    v.

AARON L. THOBE,                         O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2022-CR-92

**Judgment Affirmed**

Date of Decision: May 1, 2023

---

APPEARANCES:

    *Nick A. Catania* **for Appellant**

    *Benjamin R. Elder* **for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, Aaron Thobe ("Thobe"), brings this appeal from the November 9, 2022 judgment of the Auglaize County Common Pleas Court sentencing him to an indefinite prison term of 8 to 12 years after Thobe pled no contest to, and was convicted of, Possession of Methamphetamine. On appeal, Thobe argues that the trial court erred by denying his suppression motion. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On June 11, 2022, Thobe's Dodge truck was stopped for having an excessively loud muffler and a license plate that was not visible from 50 feet. While the officer who stopped Thobe was finishing writing warnings for the infractions, a drug-sniffing dog alerted on Thobe's truck. As a result, the truck was searched and over 100 grams of methamphetamine were located in a hidden compartment.

{¶3} Thobe was subsequently indicted for Possession of Methamphetamine in violation of R.C. 2925.11(A), a second degree felony, Trafficking in Methamphetamine in violation of R.C. 2925.03(A)(2), a second degree felony, and Hidden Compartment with Drugs in violation of R.C. 2923.241(C), a second degree felony. He pled not guilty to the charges.

{¶4} On July 22, 2022, Thobe filed a suppression motion arguing, *inter alia*, that the police did not have reasonable suspicion to stop his vehicle, that the police

delayed the stop unconstitutionally in order to provide time for the drug-sniffing dog to arrive, and that the drug-sniffing dog was not reliable in this instance. The trial court held a hearing on the matter and on September 21, 2022, the trial court filed a written entry overruling Thobe's suppression motion.

{¶5} On November 9, 2022, Thobe entered into a negotiated plea agreement wherein he agreed to plead no contest to Possession of Methamphetamine in violation of R.C. 2925.11(A), a second degree felony. In exchange, the State agreed to dismiss the remaining counts of the indictment. However, the State indicated it would be recommending a maximum prison term at sentencing.

{¶6} After determining that Thobe was entering a knowing, intelligent, and voluntary plea, the trial court accepted Thobe's plea and found him guilty. The two other counts against Thobe were dismissed. The case proceeded directly to sentencing, with the trial court imposing a maximum indefinite prison term of 8 to 12 years. Thobe now appeals his judgment entry of sentence, asserting the following assignment of error for our review.

**Assignment of Error**
**The trial court erred in denying the defendant-appellant's motion to suppress on the grounds that the defendant-appellant was held and the stop was unduly delayed absent any further reasonable suspicion in order to conduct a free air sniff from a K9 in violation of the defendant's rights under the Fourth and Fourteenth Amendment, to the United States Constitution and Article 1, Section 14 of the Ohio Constitution.**

**{¶7}** In his assignment of error, Thobe argues that the trial court erred by denying his suppression motion. More specifically, he argues that the officer who stopped his vehicle unconstitutionally prolonged the stop in order to allow the K-9 officer to arrive with the drug-sniffing dog.

### Standard of Review

**{¶8}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.*; *State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

### Evidence Presented at Suppression Hearing

**{¶9}** Patrolman Jacob Little of the St. Mary's Police Department testified that on June 11, 2022, he was conducting surveillance on Thobe's residence. Patrolman Little indicated that his department had received information that

narcotics were being used and/or sold at the residence. In fact, another law enforcement agency had recently arrested an individual who claimed that he had been selling a substantial amount of methamphetamine to Thobe.

**{¶10}** Further, Thobe's vehicle had recently been stopped and searched by the Mercer County Drug Task Force, and during that search, officers located "multiple hidden compartments that [Thobe] had manufactured, and electric power drill batteries that he had hollowed out." (Aug. 31, 2022, Tr. at 13). No drugs were found during the earlier search by the Mercer County Drug Task Force.

**{¶11}** Patrolman Little testified that shortly after 10 p.m. on June 11, 2022, Thobe left his residence in a blue Dodge truck followed by two other known drug users in a separate vehicle. Patrolman Little decided to follow Thobe and indicated it was his plan to stop Thobe's vehicle, but he wanted to observe two traffic violations before he initiated a traffic stop. Patrolman Little testified that he liked to have two violations before stopping a vehicle because he had "been burnt before." (*Id*. at 41).

**{¶12}** As he followed Thobe, Patrolman Little indicated that he could not see Thobe's license plate light within 50 feet, and he observed that the muffler on Thobe's vehicle could be heard over a block away. Based on these infractions, Patrolman Little initiated a traffic stop of Thobe's vehicle at approximately 10:18 p.m. The traffic stop was recorded on Patrolman Little's body camera.

{¶13} While Patrolman Little was in the process of coming to a stop, he radioed dispatch and requested the assistance of a K-9 officer from New Bremen. Patrolman Little then promptly got out of his vehicle and approached Thobe's truck. As he approached, Thobe's loud muffler could be heard on the body camera recording.

{¶14} Patrolman Little made contact with Thobe, and told Thobe the reason why he was stopped. Thobe stated that he was aware of his loud muffler, that he was in the process of taking care of it, and that he had actually already been cited for the loud muffler recently.

{¶15} Patrolman Little then requested Thobe's identification and his insurance card. The next several minutes of the traffic stop consisted of Thobe looking for his paperwork while he conversed with Patrolman Little. Thobe told Patrolman Little that he was operating under driving privileges and that he had paperwork for his privileges as well. Thobe explained that he had been convicted of an OVI in Auglaize County and that there was an "interlock" device in his vehicle.

{¶16} Thobe handed Patrolman Little a paper that referenced his driving privileges while he looked for his other documents. Patrolman Little read the paper and stated that it was sufficient to establish Thobe's driving privileges, even if it was not the official paper that Thobe was searching for. Thobe then took a few moments to pull up his insurance on an app on his phone. Patrolman Little

acknowledged the proof of insurance, then went back to his car and opened a pad and started writing a warning for the loud muffler. At this point, less than six minutes had elapsed since Patrolman Little put his vehicle in park for the traffic stop.

{¶17} While Patrolman Little was working on the written warning, he checked the license plate for Thobe's truck and the plate came back to a 2006 black Mercedes sedan. Another officer was on the scene speaking with Thobe, so Patrolman Little radioed the other officer and told him to ask Thobe about the plate discrepancy. Patrolman Little then continued writing the written warning for just over a minute until he got out of his vehicle to assist the other officer who was speaking with Thobe. When Patrolman Little got back to Thobe's truck, the other officer on the scene was flipping through Thobe's paperwork for his black Mercedes sedan, which was another vehicle Thobe owned. The officers asked Thobe for his truck registration and he produced that paperwork.

{¶18} Patrolman Little asked the other officer to run the VIN on the Dodge truck while he finished writing the written warnings. Patrolman Little got back to his vehicle approximately 10 minutes after he parked it behind Thobe's truck and continued writing the written warnings.

{¶19} Patrolman Little finished his first written warning approximately 12 minutes after parking behind Thobe. He then began writing his second written

warning, and before that written warning for the license plate light was complete, the K-9 officer from New Bremen arrived on scene and conducted the free-air sniff of Thobe's vehicle. The dog alerted on the driver's side-door just over 17 minutes after Patrolman Little parked his vehicle behind Thobe, and approximately 4 minutes after Thobe's VIN was checked. Thobe's vehicle was subsequently searched and over 100 grams of methamphetamine were located in a hidden compartment.

Analysis

**{¶20}** Thobe sought suppression of the methamphetamine, arguing that Patrolman Little unconstitutionally prolonged the stop to allow time for the K-9 officer to arrive at the scene.[1] The trial court overruled Thobe's motion, finding the officer's testimony credible in that: "The officer did indeed have probable cause to stop for each of the two violations. He was within his rights to issue two citations or two warnings. The time he took to complete those written warnings was reasonable." (Doc. No. 53).

**{¶21}** While the trial court noted the *potential* for constitutional abuses by officers, it determined that there was no constitutional violation here. The trial court concluded that the "negligible time involved of less than 17 minutes from stop to sniff while the written warnings were still being written" was reasonable. (*Id.*)

---

[1] For a discussion of Fourth Amendment legal authority as it pertains to open-air sniffs of a vehicle, *see State v. Haley*, 3d Dist. Marion No. 9-22-04, 2022-Ohio-2188, ¶ 7-11.

**{¶22}** Thobe challenges the trial court's determination on appeal, arguing that Patrolman Little extended the stop by stalling in completing the written warnings. In support of his argument, Thobe cites *Rodriguez v. United States*, 575 U.S. 348, 350-351, 125 S.Ct. 1609 (2015), wherein the Supreme Court of the United States held:

> **[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation.**

*Rodriguez* at 350-351 (alterations and quotations omitted).

**{¶23}** Thobe argues that under *Rodriguez*, the Eighth District Court of Appeals has found that an officer impermissibly delayed a traffic stop by stalling before he wrote a citation in order to provide time for a K-9 officer to arrive, even though only 9 minutes elapsed between the traffic stop and the dog sniff. *See State v. Harris*, 8th Dist. Cuyahoga No. 109997, 2021-Ohio-3200. He contends that the 17 minutes here would fall far outside of that window, and that we should find *Harris* persuasive.

**{¶24}** Contrary to Thobe's argument, *Harris* is readily distinguishable on its face because the officer in that case admitted to delaying writing a citation to allow time for the drug-sniffing dog to arrive. *Harris* at ¶ 11, 25. Thus the officer in *Harris*

was not consistently working on the purposes of the stop. By contrast, in this case, at all times Patrolman Little was working on the purpose of the stop.

**{¶25}** In fact, the recording of the incident actually shows that Patrolman Little took actions to *expedite* the stop, which further distinguishes *Harris*. For example, when Patrolman Little learned that Thobe's plate was showing that the vehicle should have been a 2006 black Mercedes sedan, Patrolman Little radioed the other officer on the scene and told him to ask Thobe about the registration/plate issue so he could continue writing the written warnings. In addition, at a later point, Patrolman Little asked the other officer on scene to check the VIN on the Dodge truck while Patrolman Little worked to finish written warnings. Thus there was no delay akin to *Harris*.

**{¶26}** Moreover, it is important to emphasize that under *Rodriguez*, "The critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop." *Rodriguez* at syllabus. There is no indication in this case that time was added to the stop. *See State v. Lawler*, 3d Dist. Marion No. 14-19-25, 2020-Ohio-849, ¶ 4 (affirming suppression where, *inter alia*, a traffic stop *was* prolonged by law enforcement officer "wait[ing] in his patrol vehicle for approximately 25 minutes until the canine unit arrived on scene."). At each stage of Patrolman Little's interaction with Thobe, he learned information that reasonably required further investigation such as

Thobe's driving privileges and his license plate issue. "Beyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez* at 349.

**{¶27}** After reviewing the record and the applicable legal authority, we do not find that the trial court erred by denying Thobe's suppression motion. The trial court's factual findings were supported by the record and after a de novo review of the trial court's legal determinations, we find no error. Therefore, Thobe's assignment of error is overruled.

*Conclusion*

**{¶28}** Having found no error prejudicial to Thobe herein in the particulars assigned and argued, we affirm the judgment of the Auglaize County Common Pleas Court.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**