# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2872
_____

United States of America

*Plaintiff - Appellee*

v.

Chandan Prentiss Hurd, also known as Jermaine Riley, also known as Chandon
Prentice Hurd

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota - St. Paul
_____

Submitted: March 13, 2015
Filed: May 8, 2015
_____

Before WOLLMAN and COLLOTON, Circuit Judges, and WHITE,[1] District
Judge.
_____

WHITE, District Judge.

_____

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern
District of Missouri, sitting by designation.

Chandan Prentiss Hurd ("Hurd") pleaded guilty to a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court sentenced Hurd to 71 months imprisonment. Hurd appeals his conviction and sentence following the district court's[2] denial of his motion to suppress evidence seized during a stop and search. We affirm.

## I.

In the early hours of March 23, 2013, Minneapolis Police Department Officers William Martin and Nicholas Englund were on patrol in the Second Precinct in Northeast Minneapolis. This area of the Second Precinct experienced higher levels of criminal activity, especially narcotics transactions and domestic disputes. Officers Martin and Englund observed a car stopped in the middle of the road with Hurd standing outside the car next to the driver's side window. Based on the high-crime location, the darkness of the area where the car was parked, the cold temperature, and the absence of houses or buildings on the block, Officer Martin found it odd to see someone standing outside a car, and he suspected a narcotics transaction was taking place.

Officer Martin turned the car around, and Officer Englund informed dispatch that they were investigating a suspicious vehicle. Officer Martin stopped the squad car behind the other car. Hurd started to approach the squad car with his hands in his jacket pockets. The officers exited their vehicle and ordered Hurd to remove his hands from his pockets. Hurd initially took out his hands but then put them back in his pockets a few seconds later. Hurd continued to approach the officers with his hands in his pockets, despite continued orders to remove them. The officers subsequently grabbed Hurd and placed him over the hood of the squad car. Hurd still

---

[2] The Honorable Michael J. Davis, Chief United States District Judge for the District of Minnesota.

refused to take his hands out of his pockets, and officer Martin reached into the pocket and felt the butt of a handgun. The officers were able to pull the gun from the pocket and learned that it was a loaded, cocked .45-calibur pistol, whereupon Hurd was handcuffed and arrested.

Hurd was charged with being a felon in possession of a firearm. He moved to suppress the evidence obtained as a result of the search and seizure, arguing that the officers had no reason to conduct a *Terry*[3] stop because they lacked a reasonable, articulable suspicion that criminal activity was afoot. After an evidentiary hearing, the magistrate judge[4] issued a Report and Recommendation denying the motion to suppress. The district court issued an order adopting the Report and Recommendation, concluding that the fact Hurd was standing next to the door of a car stopped in the middle of the street in a high-crime area known for drug dealing provided the officers an objective basis for the stop. Further, the court determined that a protective frisk for officer safety purposes was appropriate under the circumstances, in light of Hurd's refusal to show his hands. After the court denied Hurd's motion to suppress, he entered a guilty plea.

Hurd now argues that the district court erred when it denied Hurd's motion to suppress evidence that was seized in violation of his Fourth Amendment rights.

## II.

"We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Clutter*, 674 F.3d 980, 982 (8th Cir. 2012).

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

[4] The Honorable Arthur J. Boylan, then Chief Magistrate Judge of the United States District Court for the District of Minnesota, now retired.

Hurd contends that the officers did not observe any suspicious conduct that would have led them to believe that a crime was being, or had been, committed. Additionally, Hurd argues that the officers did not have a reasonable belief that Hurd was armed and dangerous to justify a pat down frisk.

**A.**

A law enforcement officer may detain a person for investigation without probable cause to arrest when the officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994). "To be reasonable, the suspicion must be more than an 'inchoate and unparticularized suspicion or "hunch".'" *Id.* (quoting *Terry*, 392 U.S. at 27). However, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

Hurd argues that the officers did not reasonably suspect that he was engaged in criminal activity in making the stop. Hurd contends that a generalized fear of criminal activity and the presence of a suspect in a high-crime area are insufficient to justify seizure. He argues that Officer Martin's testimony that "it seemed odd, and it kind of seemed to me like maybe it was a narcotics transaction" was merely a generalized suspicion and did not justify the stop.

The district court found that the *Terry* stop was lawful, relying on (1) the fact that the car was parked in the middle of the road with an individual standing outside

next to the driver's side window; (2) the fact that it was the middle of the night on a dark street in a poorly-lit area with no houses or businesses around; (3) the fact that it was cold, therefore unusual for a person to be standing outside; and (4) the fact that the stop happened in a higher crime area known for narcotics transactions. Officer Martin testified that his experience as a police officer, along with the factors he witnessed, provided a reasonable, articulable suspicion that a hand-to-hand drug transaction was underway. A district court's findings regarding credibility of witnesses are entitled to great deference and are virtually unreviewable. *United States v. Wright*, 739 F.3d 1160, 1166-67 (8th Cir. 2014) (citations and internal quotations omitted).

We conclude that the totality of the circumstances, including the specific facts of Defendant's actions, combined with Officer Martin's experience, created a reasonable suspicion that justified the *Terry* stop. In *United States v. Cornelius*, factors such as being in a high narcotics area and the suspect placing his hands in his pockets were sufficient to justify a *Terry* stop. 391 F.3d 965, 967 (8th Cir. 2004). Hurd argues that, unlike the suspect in *Cornelius*, the officers were not aware of any outstanding warrants or prior criminal activity committed by Hurd. However, a car parked in the middle of the road after midnight in a high crime area with Hurd standing outside the driver's side window, Hurd's refusal to remove his hands from his pockets despite orders from the officers, and Officer Martin's experience and knowledge of the area and hand-to-hand drug transactions were sufficient facts to justify the *Terry* stop. *United States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991).

**B.**

Hurd also claims that the frisk was unlawful. Hurd argues that the officers were not fearful and immediately intended to search Hurd regardless of probable cause. Further, Hurd contends that Officer Martin's belief that Hurd was hiding something does not equate to believing Hurd was armed and dangerous.

Here, the officer testified that Hurd's placement of his hands in his pockets and his refusal to remove them at Officer Martin's directive justified the pat down because the officers suspected that Hurd was armed and dangerous. We find that the initial stop was justified, and in light of those circumstances, Hurd's subsequent behavior of walking toward the officers with his hands in his pockets and refusing to comply with police orders to remove them justified the frisk. *Cornelius*, 391 F.3d at 967-68; *Knox*, 950 F.2d at 519. An officer making an investigatory stop may perform a pat-down frisk for weapons on a suspect where the officer believes the suspect may pose a safety threat. *Cornelius*, 391 F.3d at 967-68 (citations omitted). "A protective frisk is constitutionally reasonable when a police officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous.'" *Id.* at 968 (quoting *Terry*, 392 U.S. at 30).

The totality of the circumstances gave the officers reasonable suspicion to conclude that a crime was taking place and that Hurd was armed and dangerous. Consequently, the seizure of Hurd did not violate the Fourth Amendment, and the district court properly denied his motion to suppress the firearm obtained during the stop.

The Judgment of the district court is affirmed.

_____