[Cite as *State v. Christian*, 2018-Ohio-957.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 105601 and 105602**

# STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

# ANTHONY CHRISTIAN, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-17-612918-A and CR-17-612918-B

**BEFORE:** S. Gallagher, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** March 15, 2018

**ATTORNEY FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Sean Kilbane
    Anthony Thomas Miranda
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEES**

**For Anthony Christian**

Lawrence R. Floyd
P.O. Box 202271
3713 Lee Road
Shaker Heights, Ohio    44120

**For Marcus Cammon**

Jerome M. Emoff
Dworken & Bernstein Co., L.P.A.
1468 West Ninth Street, Suite 135
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

{¶1} The state of Ohio appeals the trial court's granting of Anthony Christian's and Marcus Cammon's motions to suppress. For the following reasons, we reverse.

{¶2} Christian was indicted on two weapons charges, and Cammon was indicted on several weapons, drug, and attendant charges. The indictments resulted from a search of the defendants and their parked vehicle. Both defendants filed motions to suppress, and the trial court held a joint hearing on the motions.

{¶3} The state's sole witness was a detective of the Cleveland police department's gang impact unit. He testified that, on the day in question, at approximately 2:00 p.m., he and two other detectives, also from the gang impact unit, were on routine patrol in the area of East 40th Street and Quincy Avenue in Cleveland, which he described as a "high-crime area." He and the other detectives were in an unmarked black Chevrolet Tahoe, with nontinted windows and anterior police lights. The detectives were dressed in plain clothes but were wearing tactical vests that had "POLICE" in white lettering on the front and back, and they were also wearing their police badges on their chests.

{¶4} While they were patrolling, the testifying detective, who was the back-seat passenger, saw Christian walk up to the front door of a home and meet with another male. None of the detectives knew Christian or the man with whom he met. Christian and the male made a "hand-to-hand transaction." He described such a transaction as "where two people * * * meet up with each other and something is handed from one person to the other." The detective testified that it did not appear that Christian and the male had

merely exchanged a handshake or a greeting; rather, it appeared to him that some item was handed off between them, although he could not specifically see anything transferred. The detectives believed they witnessed a hand-to-hand narcotic transaction.

{¶5} Christian was at the door for only a "couple of seconds," before he ran back to a nearby, legally parked minivan. When Christian reached the minivan, he looked "directly into" the police vehicle. Christian then looked back over his shoulders toward the police vehicle five or six times. The detective opined, based on his police experience, that Christian was aware of the detectives' presence and status as law enforcement officers.

{¶6} The detectives drove around the block, and when they came back to where they had last seen Christian, the minivan was still parked in the same spot. Christian and Cammon remained inside it. The detectives, because of the suspect nature of the hand-to-hand transaction, the nervous, "out of the ordinary" behavior of Christian, and the high-crime nature of the area, decided to "stop" the van to investigate. They activated the Tahoe's lights and sirens and pulled up behind the van.

{¶7} As the detectives approached the minivan, Christian reached down toward the floor, toward the middle portion of the back of the vehicle. Cammon exited the minivan, "bladed his body away from" the detectives, and said "I didn't do anything wrong," as he reached down toward his waistband area. Cammon "tried to re-enter the vehicle, bending over the front passenger's seat out of [the detectives'] view, reaching down towards the floor." Cammon then ran, and two detectives gave chase on foot.

**{¶8}** Cammon was apprehended and searched. Cammon had a plastic baggie, with what appeared to be crack cocaine, in one of his pockets. Cammon was handcuffed and returned to the minivan. At that time, Christian had been removed from the vehicle and detained. Both defendants were handcuffed, and they were either standing behind the van or were in the police vehicle. The detectives then executed a search of the minivan. The detectives recovered a gun underneath the front passenger seat and another gun underneath a third-row seat.

**{¶9}** The trial court found that "there existed no reasonable suspicion of criminal activity. [The detective] may have had a suspicion or a hunch criminal activity was afoot, but he did not articulate a *reasonable* suspicion of criminal activity as required by *Terry v. Ohio*[, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]." (Emphasis sic.) The trial court further found that the evidence did not establish that Christian was aware that the police were in the Tahoe, or that his interaction with the unknown male was a "hand-to-hand transaction." Thus, at this stage our inquiry is limited to determining the validity of the initial encounter. The trial court did not render any decisions with respect to the defendants' remaining arguments.

**{¶10}** "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). However, after accepting the facts as true, we must independently determine, without

deference to the trial court, whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). The trial court accepted the detective's testimony in this case — the court took issue with the legal conclusion that could be drawn therefrom. Thus, we must independently review the application of the facts to the relevant legal standard. Although the state quibbles with the trial court's factual conclusions about the lighting and the defendants' detection of the police detectives' presence before the investigatory stop, neither fact would alter the legal conclusion. Thus, we need not discuss or resolve any factual issues as the state requests.

{¶11} The trial court found that the detectives observed what they believed to be, because of their training and experience, a "hand-to-hand" transaction between Christian and an unknown male indicative of a drug purchase. The detectives observed Christian walk to the house, engage in the hand-to-hand transaction, and immediately return to the passenger side of a parked vehicle for which no driver was readily apparent. According to the testimony, Christian kept nervously glancing at the unmarked police vehicle as it drove past. The trial court found that it was unknown if anything was exchanged during the hand-to-hand transaction and whether Christian was aware that the unmarked vehicle held police detectives. When the detectives initiated the investigatory stop, Cammon "bladed his body" away from the detectives and reached for his waistband area. He then fled the scene after fumbling with something in the back of the van. The detectives

chased and detained Cammon. Christian remained in the second-row area of the parked vehicle during the chase.

**{¶12}** In applying those facts to the applicable legal standard, the trial court acknowledged *State v. Agee*, 8th Dist. Cuyahoga No. 94035, 2010-Ohio-5074, ¶ 5, in which police officers witnessed the defendant exit a lawfully parked vehicle and approach another person while both extended their hands. Before continuing, the defendant checked around, noticed the presence of the police officers, and "darted back" into his vehicle. *Id.* The police initiated a stop and observed the defendant making furtive movements as they approached. *Id.* at ¶ 23. Upon that evidence, it was concluded that the officers articulated a reasonable suspicion that the defendant was engaged in criminal activity, validating the initial stop.

**{¶13}** The trial court distinguished *Agee*, finding that Christian did not make any abrupt actions or stop the hand-to-hand transaction upon noticing the detectives. The court also concluded that the "nervous" glance at the unmarked vehicle was too speculative and highly subjective because furtive movements alone are not sufficient to support reasonable suspicion of criminal activity in high-crime areas. *State v. Caldwell*, 5th Dist. Richland No. 2011-CA-0024, 2011-Ohio-5429, ¶ 47. Finally, the trial court placed elevated significance on the fact that the detectives could not see if anything was passed between the two suspects when the hand-to-hand transaction took place.

**{¶14}** The detective's testimony was not deemed incredible. Neither Christian nor Cammon testified. The trial court concluded that the testifying detective saw what

he saw, but the detective's suspicion of criminal activity with respect to the perceived hand-to-hand drug transaction was not reasonable because there was a possibility that Christian was engaging in an innocent activity — merely shaking the occupant's hand. Thus, the trial court based its legal conclusion on undisputed evidence; the court simply inferred that because innocent explanations existed for the alleged illegal conduct, that legally speaking, the officers were unable to articulate a reasonable suspicion of having observed illicit behavior. This is an important distinction because we cannot defer to the trial court's conclusions under the belief that the trial court's conclusions resolved the credibility of the witnesses. The trial court found that innocent explanations for Christian's behavior existed for the purpose of distinguishing case law in reaching a legal conclusion. Thus, the only issue properly before this court is the application of the accepted facts to the applicable legal standard. The trial court merely considered the evidence to be insufficient to withstand legal scrutiny. With this in mind, we must independently review the application of the facts to the law, and we do not defer to the trial court.

{¶15} The trial court relied on cases stating that the existence of nervous glances is not sufficient to find a reasonable suspicion of criminal activity. *Caldwell*; *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). We do not disagree with that position as a matter of black letter law. The issue in this case, however, is determining whether the existence of multiple factors, not just Christian's nervous

glances, in support of the detectives' reasonable suspicion justified the initial investigative stop. We cannot consider a single fact in isolation.

{¶16} Warrantless searches are presumptively unconstitutional, subject to a limited number of specific exceptions. One exception to the rule requiring warrants is found in *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, which stands for the proposition that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibl[e] criminal behavior * * *." *Id.* at 22. To warrant a *Terry* investigatory stop, the police "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. The Ohio Supreme Court additionally stated that an investigatory stop "must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶17} *Terry* also held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous" the officer may conduct a protective search for weapons. *Terry* at 24; *see also State v. Williams*, 51 Ohio St.3d 58, 554 N.E.2d 108 (1990).

{¶18} In *Agee,* for example, the court considered, (1) the fact that the officers witnessed the defendant approach another with hands outstretched, (2) the officers' experience and training, (3) the high-crime area in which the conduct occurred, (4) the defendant's evasive behavior after seeing police officers, and (5) the fact that the

defendant made furtive movements after the stop was first initiated, in determining that the investigative stop was justified. *Agee,* 8th Dist. Cuyahoga No. 94035, 2010-Ohio-5074, at ¶ 21-24. In this case, (1) the conduct occurred in a what the detective described as a high-crime area; (2) the detectives were experienced; (3) the detectives observed Christian walk up to a house, conduct some form of a hand-to-hand transaction with the occupant, indicative of the drug trade, and immediately walk back to the passenger side of the parked car; and (4) there were furtive movements by both defendants after the detectives initiated the investigative stop. Thus, at least four of the factual underpinnings of *Agee* are present. Importantly, *Agee* was not dependent on the detectives observing an object being exchanged, and therefore, the noted distinction is not dispositive.

{¶19} The only factual difference between *Agee* and the present case is the defendants' reactions to seeing detectives before the detectives initiated the investigative stop. The fact that Christian did not see the detectives before conducting the purported hand-to-hand drug transaction or did not flee before the detectives initiated the stop should not trouble the analysis. It is merely one factor for consideration, but its absence is not dispositive — not all offenders are as adept at spotting police officers as the defendant in *Agee* was. *Agee* is not otherwise distinguishable, and the outcome should therefore be the same.

{¶20} And finally, the fact that Christian walked up to the house and immediately returned to his car after shaking the occupant's hand (or conducting a hand-to-hand drug

transaction, depending on the perspective) distinguishes these facts from cases such as *State v. Carmichael*, 8th Dist. Cuyahoga No. 95618, 2011-Ohio-2921, and *State v. Pettegrew*, 8th Dist. Cuyahoga No. 91816, 2009-Ohio-4981, in which it was concluded that the mere fact of seeing a hand-to-hand transaction in progress was insufficient to justify the investigative stop. *State v. Clayton*, 8th Dist. Cuyahoga No. 102277, 2015-Ohio-4370, ¶ 22 (the only fact offered as a basis for reasonable suspicion was the observation of a hand-to-hand transaction). Further, immediately after the detectives initiated the investigative stop, Cammon exhibited conduct consistent with the intent to draw a weapon from his waistband before attempting to flee the scene. Christian immediately made furtive movements appearing to place or grab something from the interior of the van — conduct that can be considered under the totality of the circumstances. *United States v. Hurd*, 785 F.3d 311, 314_(8th Cir.2015); *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir.2006).

{¶21} The detectives' experience and training, the fact that the defendants were in a high-crime area, and the fact that Christian walked up to the house and immediately returned to the parked vehicle where additional furtive movements by both defendants were observed once detectives approached the parked vehicle, satisfy the constitutional safeguards. *Hurd*; *Paulette*. We are not faced with a situation in which the officers only observed two people shake hands and go their separate ways in a high-crime area. Christian, at the least, aroused reasonable suspicion by walking to the house and immediately returning to his vehicle after conducting what experienced and trained

detectives observed to be hand movements consistent with drug-dealing activity. *See, e.g.*, *State v. Benton*, 8th Dist. Cuyahoga No. 88099, 2007-Ohio-1142, ¶ 17 (officers had probable cause to arrest based on observing a hand-to-hand transaction). Cammon fortified the suspicion by reacting to the detectives' presence in the manner he did. Importantly, we do not base this decision on the perceived nervous glances Christian gave the detectives — the trial court found those to be insufficient. In light of the totality of the circumstances, the detectives had a reasonable, articulable suspicion justifying the investigative stop.

**{¶22}** We reverse the decision to suppress the evidence based on the validity of the initial stop. The detectives articulated a reasonable suspicion that the defendants were engaged in criminal conduct justifying the initial encounter and detention. The matter is remanded for further proceedings, with the acknowledgment that there are outstanding suppression issues to be resolved — such as the search of the minivan following the defendants' detention and the defendants' standing to contest that search.

**{¶23}** Reversed and remanded.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., CONCURS;
LARRY A. JONES, SR., J., DISSENTS WITH SEPARATE OPINION


LARRY A. JONES, SR., J., DISSENTING:

{¶24} Respectfully, I dissent and would uphold the trial court's decision granting the defendants' motions to suppress.

{¶25} As the majority correctly notes, the trial court assumes the role of trier of fact in considering a suppression motion. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Thus, the trial court is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.*

{¶26} The trial court here reached its conclusions after considering the direct and cross-examinations of the sole witness, the detective, who "laboriously explored" the events that gave rise to the stop of the defendants. The trial court found that the detective failed to establish that there was reasonable suspicion of criminal activity, and in doing so, distinguished this case from *State v. Agee*, 8th Dist. Cuyahoga No. 94035, 2010-Ohio-5074, which the majority relies on.

{¶27} The majority finds, however, that this case is aligned with *Agee*, and that the detective "articulated a reasonable suspicion that the defendants were engaged in criminal conduct justifying the initial encounter and detention." Upon review, I believe the trial court's distinction of *Agee* from this case was proper.

**{¶28}** In *Agee*, the police observed the defendant get out of a vehicle and approach a female, who was a short distance away. Both the defendant and the female put their hands out, "as [if] to make a transaction." *Id.* at ¶ 5. The defendant then gave "one last look to see if anyone was around." *Id.* At that point, the defendant saw the police vehicle,[1] and "abruptly pulled his hand away and darted back" to the vehicle. *Id.* at ¶ 6.

**{¶29}** The trial court here found that *Agee* was distinguishable from this case because (1) the facts in *Agee* "clearly" supported that the defendant and the pedestrian engaged in an exchange, whereas it was "unknown" here; and (2) the facts in *Agee* demonstrated that the defendant was aware of the arrival of the police on the scene and he abruptly ceased the transaction, whereas here the detective's testimony about Christian's awareness of the police's presence was "mere conjecture."

**{¶30}** The majority makes much of the trial court's failure to explicitly find the detective's testimony incredible. Thus, according to the majority, the trial court necessarily found the detective's testimony credible and, we, therefore have to accept that testimony as true, and independently determine, without deference to the court, whether the facts satisfy the relevant legal standard.

**{¶31}** Although it is true that the trial court never directly stated that the detective's testimony was incredible, I believe that the trial court indirectly found so. *See State v. Smith*, 3d Dist. Marion No. 9-17-05, 2017-Ohio-5845, ¶ 18, fn. 1 ("Although

---

[1]Presumably, the police in *Agee*, unlike here, were in a marked police vehicle. According to the testifying detective, he and his partner were "working some warrants" at the time they observed the activity of the defendant in the case.

the trial court did not explicitly say it found [the sergeant] not to be credible, it is implicit in the factual findings.")   The trial court's findings here imply that it did not find the detective's testimony completely credible.   For example, the court noted that contrary to the detective's testimony that Christian looked back nervously at the police and, therefore, was aware of their presence, the court found that Christian's response could have equally been attributed to "merely * * * keep[ing] himself aware of his surroundings."

{¶32} On this record, I would defer, as required, to the trial court's findings of fact, and uphold its decision to grant the defendants' motions to suppress.

{¶33} In light of the above, I respectfully dissent.